

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00142-CR

JAMES SANCHEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2011-432,865, Honorable Bryan Poff, Presiding by Assignment

June 12, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, James Sanchez, appeals the trial court's judgment convicting him of the first-degree felony offense of possession of four grams or more but less than 200 grams of a controlled substance from penalty group 1, namely, cocaine, with intent to deliver.[1] After it found that appellant was guilty of the charged offense and that he used or exhibited a deadly weapon during the commission of the offense, the jury assessed his felony-enhanced punishment at forty years' incarceration. On appeal, appellant

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2010).

maintains the evidence presented was insufficient to prove beyond a reasonable doubt that appellant intentionally or knowingly possessed with the intent to deliver a controlled substance in the amount of four grams or more but less than 200 grams. We will affirm.

Factual and Procedural History

On October 21, 2011, Lubbock Police Department's Narcotics Unit executed a search warrant at 506 53rd Street in Lubbock, Texas, the residence at which appellant resided. No one challenges the facts leading up to or alleged in support of that warrant. Six individuals were present at the residence when the warrant was executed: (1) appellant; (2) Clemente Sanchez, appellant's father; (3) Vanessa Sanchez, appellant's sister; (4) Cassandra Gonzales, appellant's girlfriend; (5) "Nancy," a three-year-old child; and (6) "Albert," another three-year-old child.

Sergeant Ronnie Roan of the Lubbock Police Department SWAT team was the first officer to enter the residence and saw appellant coming around a corner and out of the hallway from the back bedroom area. When appellant saw Roan, appellant ran back toward the area of two bedrooms, rooms identified at trial as the northeast and southeast bedrooms. Roan pursued appellant and detained him at the doorway to the southeast bedroom.

During the ensuing search, LPD Investigator Tony Williams located two baggies of suspected cocaine and several other items in the northeast bedroom.[2] One baggie of cocaine was on the dresser in that room. Also on the dresser were a rolled dollar bill,

---

[2] James M. Thomas, a forensic scientist with the DPS Regional Laboratory, testified that the two baggies of white powdery substance were turned over, tested, and found to contain 9.84 grams of a cocaine mixture.

some "faint lines" of white powdery residue, a partially smoked marijuana cigarette, and a green leafy substance inside of a jar. The second baggie of cocaine and a scale, on which there was also white residue, were located inside a black bag on a shelf near the bed in that same bedroom.

Williams also found a third baggie labeled "CUT" inside of a box that was located inside the chest of drawers in the northeast bedroom. It was determined that this baggie contained L-glutamine powder, a common cutting agent used as an additive to cocaine. Williams also discovered an unloaded Glock 9mm, semi-automatic handgun, along with a nearby extended magazine with fourteen rounds of ammunition inside it, both lying on a headboard in that same northeast bedroom. Additionally, $1,173 was found in a jacket located in the bedroom.

Williams testified that it was his understanding that the northeast bedroom was appellant's bedroom. Appellant's wallet and an undisclosed amount of cash—apparently separate and apart from the $1,173 found in the jacket pocket—were located in the northeast bedroom, as was a bill from appellant's health insurance plan addressed to him. LPD Investigator Michael Chavez, also participating in the search, testified that he, too, had information indicating that the northeast bedroom was appellant's bedroom.

After hearing the evidence relating to the items found in the northeast bedroom, which the officers understood and the evidence pointed to as appellant's bedroom, the jury heard a recording of a phone call between "Steve," a relative of appellant's girlfriend, and appellant, who was incarcerated at the time at the Lubbock County Jail.

In this recording, appellant apologized to "Steve" and took full responsibility for the drugs discovered in and seized from the house.

On appeal, appellant argues that he was but one of four adult occupants of the residence and that the room in which the controlled substance and other paraphernalia were found was a room accessible to all four adult occupants. Consequently, he maintains, the evidence that he knowingly possessed the cocaine was insufficient to support his conviction. We will affirm.

Standard of Review and Applicable Law

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single

4

evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

A conviction for possession of cocaine with intent to deliver is supported only when the evidence establishes that the defendant "knowingly manufacture[d], deliver[ed], or possesse[d] with intent to deliver" the cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." TEX. PENAL CODE ANN. § 6.03(b) (West 2011). The mere presence of the accused at the place where contraband is located does not make him a party to joint possession, even if he knows of the contraband's existence. *Jenkins v. State*, 76 S.W.3d 709, 712 (Tex. App.—Corpus Christi 2002, pet. ref'd). Proof of possession requires evidence that the accused exercised "actual care, custody, control, or management" over the substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2013). Thus, the State must prove the accused (1) "exercised control, management, or care over the substance" and (2) knew that the substance "possessed" was contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988) (en banc).

When the accused is not in exclusive control of the place where the contraband is found, the State must establish care, custody, control, or management by linking the accused to the substance through additional facts and circumstances. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Deshong v. State*, 625

5

S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981)).  Be it direct or circumstantial, the State's evidence of links must establish, "to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous."  *See id.* at 405–06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc)); *Park v. State*, 8 S.W.3d 351, 352–53 (Tex. App.—Amarillo 1999, no pet.).  In other words, the evidence must affirmatively connect the accused to the contraband in such a manner and to such a degree that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it.  *See Travis v. State*, 638 S.W.2d 502, 503 (Tex. Crim. App. [Panel Op.] 1982).

The several factors by which an accused may, under the unique circumstances of each case, be sufficiently "linked" to the contraband, include the following considerations: (1) the defendant's presence when a search is conducted; (2) whether the contraband is in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics connecting himself to the contraband; (6) whether the defendant made incriminating statements connecting himself to the contraband; (7) whether the defendant made furtive gestures; (8) whether there was an odor of contraband; (9) whether other contraband or drug paraphernalia were present; (10) whether the defendant owned or had the right to possess the place where the contraband was found; (11) whether the place where the contraband was found was enclosed; (12) whether the defendant was found with a large amount of cash; (13) whether the conduct of the defendant indicated a consciousness of guilt, including whether the accused attempted to flee; and (14)

whether occupants of the premises gave conflicting statements about relevant matters. *See Evans*, 202 S.W.3d at 162 n.12; *Jenkins*, 76 S.W.3d at 712–13; *see also Triplett v. State*, 292 S.W.3d 205, 209 (Tex. App.—Amarillo 2009, pet. ref'd) (listing numerous factors to be considered in analysis). These factors, however, are simply that—factors which may circumstantially establish the sufficiency of evidence offered to prove a knowing "possession." *See Evans*, 202 S.W.3d at 162 n.12 (cautioning courts that these factors "are not a litmus test"). It is not the number of links that is dispositive; rather, it is the logical force of all the evidence. *See id.* at 162.

Analysis

In support of his challenge to the sufficiency of the evidence, appellant emphasizes that only one baggie of white powdery substance was in plain view, that he did not own the residence, that the contraband was not found in close proximity to him, that there was no evidence that he had recently ingested cocaine, and that the evidence does not suggest that the occupants gave conflicting statements. He also points out that he was not found with a large amount of cash on his person; the cash discovered during the search was actually in the pocket of a jacket found in the northeast bedroom, a room from which appellant attempts to distance himself.

Indeed, some of appellant's contentions may be accurate. Nonetheless, we must examine the evidence beyond those select considerations proffered by appellant to assess "the logical force of all the evidence" and determine whether it adequately connected appellant to the controlled substance. *See id.* Two baggies of cocaine were discovered, along with a variety of paraphernalia and evidence of cocaine use in the

bedroom, including the rolled dollar bill and the faint residue lines on the dresser. It appears that some amount of marijuana was also present in the bedroom, which lends additional weight to the evidence supporting the conclusion that appellant knowingly possessed the cocaine.

While appellant may not have owned the residence, the evidence establishes that he did reside there and, therefore, had the right to possess the premises. In fact, the evidence also suggests that the northeast bedroom, where the cocaine, paraphernalia, weapon, ammunition, and cash were discovered, was the bedroom occupied by appellant. Appellant's wallet, identified as such by the driver's license it contained, was found in this bedroom, as was a health insurance plan bill or statement bearing his name and identifying member information. We add that all of the items found during the search of the residence were discovered within the bounds of what was understood as appellant's bedroom, an enclosed space.

Again, some of the contraband was in plain view. Some of the paraphernalia was tucked away in boxes or bags on or near the bedroom shelves, but at least one bag of cocaine, according to Williams, was found lying on top of the dresser. The other baggie of cocaine was found inside a bag with a digital scale on a shelf near the bed in that same bedroom, which is, given the evidence that this bedroom belonged to appellant, a location seemingly within appellant's easy access and control. Appellant also demonstrated some consciousness of guilt in that, when the SWAT team entered the residence, he attempted to flee toward the back of the house.

Finally, appellant's own statements connect him to the contraband. In the recorded telephone conversation between appellant and his girlfriend's relative, recorded a few hours after appellant was arrested and as he was incarcerated in the Lubbock County Jail, appellant apologized to his girlfriend's family for getting her involved in the matter and took sole responsibility for the drugs found inside the residence, certainly suggesting that the contraband belonged to appellant and that he exercised "actual care, custody, control, or management" of the cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38). Based on the logical force of the evidence presented to it, the jury could have reasonably concluded that appellant knowingly possessed the cocaine. *See Brooks*, 323 S.W.3d at 912; *see also Evans*, 202 S.W.3d at 162. That said, the evidence is sufficient to support appellant's conviction, and we overrule appellant's contention to the contrary.

## Conclusion

Having overruled appellant's sole point of error, we affirm the trial court's judgment of conviction. *See* TEX. R. APP. P. 43.2(a).


Mackey K. Hancock
Justice


Do not publish.