NO. 07-08-0121-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 7, 2009

_____


MICHAEL WAYNE TRIPLETT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 56,046-D; HONORABLE DON EMERSON, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

Following a plea of not guilty, Appellant, Michael Wayne Triplett, was convicted by a jury of possession of less than one gram of a controlled substance, to-wit:

methamphetamine,[1] a state jail felony.  Tex. Health & Safety Code Ann.  § 481.115(b) (Vernon 2003).[2]   However, because the State alleged the offense was committed within 1,000 feet of school property, it was punishable as a third degree felony.  § 481.134(d).  Sentence was imposed by the trial court at ten years confinement, suspended in favor of ten years community supervision.  By two issues, Appellant maintains the evidence is legally and factually insufficient to support his conviction.  We affirm.

## Background Facts

At approximately 9:30 a.m. on June 22, 2007, Officers Christopher Sheffield and Paul Ware of the Amarillo Police Department were dispatched to an address to inquire about a vehicle parked in the alley.  Officer Sheffield arrived first and when he exited his patrol car, he heard male voices coming from a nearby garage.  Upon investigation, he observed two males standing in the garage, Appellant and his cousin, Kelly Shackelford.  The garage was owned by Kelly's mother and Appellant's aunt, Margie Shackelford.

According to Officer Sheffield's testimony, he could hear the occupants' conversation, but nothing about that conversation raised any suspicion.  As Officer Sheffield approached, Appellant was standing in the garage, facing the trunk of a disabled

---

[1]Methamphetamine is a controlled substance listed in Penalty Group 1.  *See* Tex. Health & Safety Code Ann. § 481.102(6) (Vernon 2003).

[2]For convenience, future references to "§___" are references to the Tex. Health & Safety Code Ann.  (Vernon 2003).

vehicle.[3]  As Officer Sheffield neared the garage, he observed a syringe cap, digital scales, and two clear plastic baggies containing what he believed to be methamphetamine located on the trunk of the vehicle.[4]  During Officer Sheffield's testimony, the State also introduced State's Exhibit 3, a photograph, which further depicts what he "saw that day."  In addition to the items already named by Officer Sheffield, the photograph shows a spoon containing a liquid substance, a syringe,[5] a lighter, cigarettes, a Gatorade bottle, an Ozarka water bottle, and a canvas bag, all on the trunk of the disabled vehicle.

Suspecting Appellant and Kelly of possessing a controlled substance, Officer Sheffield asked them to step out of the garage.  Before Kelly exited the garage, he placed a syringe he had been holding in his right hand on the trunk of the disabled vehicle.  Both Appellant and Kelly were compliant with Officer Sheffield's requests.  Officer Ware arrived and the suspects were separated and handcuffed.  Officer Ware searched Appellant, but the search revealed no drugs or drug paraphernalia on him.

Appellant and Kelly were both charged with possession of a controlled substance in a drug free zone.[6]  Kelly subsequently entered a plea of guilty pursuant to a plea bargain

---

[3]From the record, we are unable to accurately determine Appellant's distance from the trunk in feet and inches; however, Officer Sheffield does state that Appellant was "next to the trunk."

[4]Subsequent expert testimony established that two plastic baggies and a spoon contained a total of .82 grams of methamphetamine.

[5]Based upon later testimony, the syringe was not on the trunk of the vehicle at the time Officer Sheffield approached.

[6]Testimony established that the garage was located 215 feet from an elementary school.

3

with the State.  Appellant, however, maintained his innocence and proceeded to a jury trial on the merits, electing to have the court assess punishment in the event of a conviction.

At trial, Officer Ware testified that Appellant was compliant at all times during the investigation. On direct examination, when asked if he heard anything while approaching the garage, he answered, "I couldn't really remember what was said.  They were saying later on that we didn't have a right to be in their garage."

At trial, Kelly assumed sole ownership and possession of the controlled substance and drug paraphernalia and explained that he had entered into a plea bargain with the State pertaining to the events of that day.  During Margie's testimony, she too confirmed that the controlled substance belonged to Kelly.  Appellant did not testify.

Kelly and Margie both offered testimony to the effect that Appellant's purpose for being there that morning was to check on Kelly's welfare.  According to their testimony, Kelly and his wife had spent the previous evening involved in a domestic dispute.  Margie testified that she and Appellant sat in her car outside Kelly's house for about an hour while Kelly and his wife went "round and round," then in the early morning hours of June 22nd, Margie, Kelly, and Appellant drove to her residence in their separate vehicles.  According to Margie's testimony, Appellant had been at the residence less than 30 minutes and was preparing to leave to purchase a soft drink when the officers arrived.

**Possession**

As per the indictment in this case, the State was required to prove that Appellant knowingly or intentionally possessed a controlled substance in an amount less than one gram. To prove *possession,* the State was required to show that Appellant (1) exercised "actual care, custody, control, or management" of the substance and (2) knew the matter possessed was contraband. *See* § 481.102(38). *See also* Tex. Penal Code Ann. § 1.07(39) (Vernon Supp. 2008); *Poindexter v. State,* 153 S.W.3d 402, 405-06 (Tex.Crim.App. 2005).

Furthermore, when, as here, the accused does not have exclusive possession of the controlled substance or the locale where the controlled substance was found, it cannot be concluded or presumed that the accused had possession over the contraband unless there are additional independent facts or circumstances that tend to connect or link[7] the accused to the knowing possession of the contraband. *Id.* 153 S.W.3d at 406; *Evans v. State*, 202 S.W.3d 158, 161-62 (Tex.Crim.App. 2006); *Allen v. State*, 249 S.W.3d 680, 691 (Tex.App.–Austin 2008, no pet.). Mere presence of a defendant at the scene of an offense, or even knowledge that an offense is being committed, does not make one a party to joint possession. *Herndon v. State*, 787 S.W.2d 408, 410 (Tex.Crim.App. 1990) (citing *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex.Crim.App. 1982)). While some links, including

---

[7]The Court of Criminal Appeals has recognized that the term "affirmative" adds nothing to the plain meaning of "link" and now uses only the word "link" to evaluate evidence of possession. *Evans v. State*, 202 S.W.3d 158, 161 n.9 (Tex.Crim.App. 2006).

presence, may show knowledge of illegal activities, presence alone does not furnish the connection necessary to establish that a defendant knowingly possessed the contraband. *Herndon*, 787 S.W.2d at 410. Regardless of whether the evidence is direct or circumstantial, in addition to mere presence, the State's case must establish some link between the defendant and the controlled substance which is more than fortuitous. *Evans,* 202 S.W.3d at 161. The "links rule" is designed to protect the innocent bystander–a relative, friend, spouse, roommate, or even stranger to the actual possessor–from conviction based solely upon his fortuitous proximity to someone else's illegal activities. *Id.* at 161-62; *Poindexter,* 153 S.W.3d at 406.

Numerous nonexclusive factors have been recognized as contributing to an evaluation of whether an accused is linked to the contraband. *See Willis v. State*, 192 S.W.3d 585, 593 (Tex.App.–Tyler 2006, pet. ref'd); *Muckleroy v. State*, 206 S.W.3d 746, 749 n.4 (Tex.App.–Texarkana 2006, pet. ref'd). Those links include, but are not limited to: (1) whether the contraband was in plain view or recovered from an enclosed place; (2) whether the defendant was the owner of the premises or had the right to possess or control the place where the contraband was found; (3) whether the defendant was found in possession of a large amount of cash; (4) whether the contraband was conveniently accessible to the defendant; (5) whether the contraband was found in close proximity to the defendant; (6) whether an odor of contraband was present; (7) whether the defendant possessed other contraband when arrested; (8) whether the defendant possessed paraphernalia to use the contraband; (9) whether paraphernalia to use the contraband

6

was available to or in plain view of the defendant; (10) whether the physical condition of the defendant indicated recent consumption of the contraband in question; (11) whether conduct by the defendant indicated a consciousness of guilt; (12) whether the defendant made any incriminating statements when arrested; (13) whether the defendant attempted to flee; (14) whether the defendant made furtive gestures; (15) whether the defendant had a special connection to the contraband; (16) whether the persons present gave conflicting statements about relevant matters; (17) the quantity of the contraband discovered; (18) whether the defendant was armed; (19) whether the defendant was observed in a suspicious place under suspicious circumstances; (20) whether the accused was familiar or had previous experience with drugs; and, (21) whether any forensic evidence (e.g., fingerprints, DNA, etc.) connects the defendant to the contraband or its container. *See id. See also Evans*, 202 S.W.3d at 162 n.12; *Figueroa v. State*, 250 S.W.3d 490 (Tex.App.–Austin 2008, pet. ref'd), *cert. denied*, No. 08-7719, 2009 WL 425291 (U.S. Tex. Feb. 23, 2009).

There is no set formula that an appellate court can use to determine if there are sufficient links to support an inference of knowing possession of drugs. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex.App.–Dallas 2003, no pet.). Each case must be examined according to its own facts on a case-by-case basis . *Roberson v. State*, 80 S.W.3d 730, 736 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd). A factor that contributes to sufficiency in one situation may be of little or no value under a different set of facts. *Id.* Moreover,

the number of links is not as important as the combined logical force of all the evidence tending to link the accused to the contraband. *Evans*, 202 S.W.3d at 162, 166.

## Legal Sufficiency

By his first issue, Appellant contends the evidence is legally insufficient to support his conviction.[8]  We disagree.

When both the legal and factual sufficiency of the evidence are challenged, we must first determine whether the evidence is legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element of the alleged offense.  U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2008); Tex. Penal Code Ann. § 2.01 (Vernon 2003).  Evidence is legally insufficient if, when viewed in a light most favorable to the prosecution, a rational trier of fact could not have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex.Crim.App. 2009).

This standard is the same in both direct and circumstantial evidence cases. *Laster,* 275 S.W.3d at 517-18.  In measuring the legal sufficiency of the evidence to sustain a

---

[8]Appellant only contests the issue of knowing or intentional possession and does not otherwise contest the nature or quantity of the contraband, or that the offense was committed in a drug-free zone.

8

conviction, we measure the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct jury charge is a charge that accurately promulgates the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theory of criminal responsibility, and adequately describes the particular offense for which the defendant was tried. *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex.Crim.App. 2008).

In measuring legal sufficiency, an appellate court must consider all the evidence that was before the jury—whether proper or improper—so that we can make an assessment from the jury's perspective. *Miles v. State*, 918 S.W.2d 511, 512 (Tex.Crim.App. 1996). As an appellate court, we sit as a final, due process safeguard, ensuring only the rationality of the factfinder, and we must uphold the jury's verdict unless it is found to be irrational or unsupported by more than a "mere modicum" of evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). Our role is restricted to guarding against the rare occurrence when a factfinder does not act rationally. *Laster*, 275 S.W.3d at 517.

Analysis

According to the evidence presented in this case, in addition to mere presence, the following links tend to connect Appellant to the contraband:

- in *plain view* of Appellant, on the trunk of a disabled vehicle parked in the garage*,* were a syringe cap, digital scales, a spoon containing a

9

liquified controlled substance, and two plastic baggies containing a solid form of the same controlled substance;

- Appellant was in close *proximity* to controlled substance;

- Appellant was facing the items described above;

- Appellant and the only other occupant of the garage, Kelly, were not strangers to one another;[9]

- Kelly was holding a syringe at the time of their arrest;

- Kelly admitted to possessing the controlled substance;

- the contraband was in the garage which could be considered an enclosed space; and

- the occupants of the garage made a statement regarding the officers' lack of authority to be present in the garage.[10]

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support the jury's implied finding that Appellant exercised

---

[9]While it could be said that considering Appellant's association with Kelly as a link amounts to an inference of guilt by association, for purposes of a legal sufficiency review, we must review all the evidence, including inferences that might be drawn from that evidence, in a light most favorable to the prosecution. In doing so, we acknowledge that while guilt by association is contrary to our system of justice, *Allen v. State*, 249 S.W.3d 680, 702 (Tex.App.–Austin 2008, no pet.), "[t]he line between knowing possession and guilt by association can be very thin." *U.S. v. Phillips,* 496 F.2d 1395, 1397 (5th Cir. 1974).

[10]During Officer Ware's direct examination, he was asked if he heard anything when approaching the garage. He answered, "I couldn't really remember what was said. *They* were saying later on that we didn't have a right to be in their garage." (Emphasis added). In its brief, the State mentions Officer Ware's testimony as an incriminating statement indicating consciousness of guilt. While the record is unclear as to who "they" were, in all likelihood, "they" referenced Kelly and/or Appellant because Shackelford was inside the house and did not know the officers were there until they came to her door to inform her that Kelly and Appellant had been arrested.

An "incriminating statement" is a statement that tends to establish the guilt of an accused. *Black's Law Dictionary*, 1417 (7th ed. 1999). Regardless of who made the statement, we find that this sort of statement is simply not the type that tends to establish a consciousness of guilt. Assuming, arguendo, that Appellant even made the statement, we find that it does not rationally tend to link him to the drugs.

"actual care, custody, control, or management" of the substance and knew the matter possessed was contraband. Issue one is overruled.

**Factual Sufficiency**

By his second issue, Appellant also maintains the evidence is factually insufficient to support his conviction. Again, we disagree.

When conducting a factual sufficiency review, we begin with the assumption that the evidence is legally sufficient under *Jackson v. Virginia*. *See Laster*, 275 S.W.3d at 518. Evidence that is legally sufficient, however, can be deemed factually insufficient in either of two ways: (1) the evidence supporting the conviction is so weak that the jury's verdict seems "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias," or (2) considering conflicting evidence, the factfinder's verdict is "against the great weight and preponderance of the evidence." *Id.; See also Grotti,* 273 S.W.3d at 283; *Watson v. State,* 204 S.W.3d 404, 426 (Tex.Crim.App. 2006); *Clewis,* 922 S.W.2d at 135. In a factual sufficiency review, the reviewing court must consider all of the evidence in a neutral light (i.e., without the prism of "in the light most favorable to the prosecution"). *Steadman v. State,* 280 S.W.3d 242, 246 (Tex.Crim.App. 2009); *Laster*, 275 S.W.3d at 518.

In reviewing a jury's decision we are mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given testimony. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex.Crim.App. 2008). A jury is entitled to disbelieve some or all of a

witness's testimony, even when that testimony is uncontradicted. *Hernandez v. State*, 161 S.W.3d 491, 501 (Tex.Crim.App. 2005). Therefore, appellate courts should afford almost total deference to a jury's decision when that decision is based upon an evaluation of credibility, *Lancon*, 253 S.W.3d at 705; because, being present to hear the testimony, as opposed to relying upon a cold record, the jury is in the better position to judge the credibility of the witness. *Marshall v. State*, 210 S.W.3d 6189, 625 (Tex.Crim.App. 2006).

In conducting a factual sufficiency review, an appellate court must exercise its factual sufficiency jurisdiction with great deference to the jury's findings and we cannot conclude that the conviction is factually insufficient simply because we might otherwise disagree with the jury's verdict. *Watson*, 204 S.W.3d at 416-17; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). Basically, the only question to answer in a factual sufficiency review is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *See Grotti*, 273 S.W.3d at 283 (citing *Watson*, 204 S.W.3d at 415).

As directed by the Court of Criminal Appeals, in conducting our analysis we are guided by at least three "basic ground rules": (1) we must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict;[11] (2) we may only find the evidence factually insufficient when necessary to "prevent manifest injustice";[12] and (3)

---

[11]*Watson*, 204 S.W.3d at 414.

[12]*Cain*, 958 S.W.2d at 407.

12

in reversing a conviction we must explain why the evidence presented is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict.[13] *Laster*, 275 S.W.3d at 518; *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

## Analysis

Our analysis of Appellant's factual sufficiency issue requires that we address both ways in which evidence can be determined to be factually sufficient. On the one hand, Appellant contends there was conflicting evidence that renders the jury's verdict factually insufficient; whereas, on the other hand, he also argues that the evidence supporting the verdict is, in and of itself, too weak to support the jury's verdict. We will address each argument separately.

## Conflicting Evidence

Appellant contends he was merely an innocent bystander and, considering the conflicting evidence, the jury's verdict is against the great weight and preponderance of the evidence in three ways: (1) both Kelly and Margie indicated that the controlled substance belonged to Kelly, not Appellant; (2) Appellant's purpose for being there was to check on Kelly's welfare, not to possess or consume any controlled substances; and (3) Appellant was about to leave, not stay.

---

[13]*Watson*, 204 S.W.3d at 414.

According to the record before us, the "undisputed" facts[14] elicited during trial are:

- the controlled substance was located in plain view on the trunk of a disabled vehicle located in a garage which was located in Potter County, Texas, within 1000 feet of an elementary school;

- the controlled substance was found in two baggies and in a spoon containing a liquid substance;

- Appellant was in the garage, standing near the driver's side of the vehicle when Officer Sheffield arrived;

- Appellant was facing the trunk where the controlled substance was located when Officer Sheffield arrived;

- Kelly was in the garage, standing near the back of the vehicle when Officer Sheffield arrived;

- Kelly was holding an empty syringe in his right hand;

- Appellant and Kelly were not strangers to one another;[15]

- when asked to exit the garage by Officer Sheffield, Kelly placed the syringe on the trunk of the vehicle;

- Kelly and Appellant were both compliant when asked to exit the garage;

- Appellant was compliant when searched by Officer Ware;

- the premises where the controlled substance was located was owned by Margie Shackelford;

- the premises where the controlled substance was located was not in the exclusive control of Appellant;

- no cash, controlled substances, drug paraphernalia or weapons were found on Appellant during the search;

- the quantity of the controlled substance seized (methamphetamine) was less than one gram.

---

[14]Undisputed facts are those facts upon which the parties either agree or assume to be true. *Evans*, 202 S.W.3d at 163.

[15]For purposes of our factual sufficiency analysis, we have considered this to be a non-factor. *See footnote 9, supra.* Under the facts of this case, we are not required to decide whether this fact alone tends to connect Appellant to the drugs for purposes of a factual sufficiency review.

14

Additionally, there was "uncontradicted" testimony[16] that:

- Appellant's purpose for being in the garage was to check on Kelly's welfare;
- Appellant had been at the Shackelford residence for approximately 15 minutes during which time he was in and out of the garage and was planning on leaving to go purchase a soft drink; and
- Appellant and Kelly made statements questioning the officers' authority to be present in the garage.[17]

"Uncontradicted testimony"" is a concept totally different from "undisputed facts." *Evans,* 202 S.W.3d at 164. Merely because testimony is uncontradicted does not mean that its opponent, in this case the State, has assumed or admitted the truth of that fact, or that it concerns a physical fact that cannot be denied. A jury is entitled to determine which uncontradicted facts it chooses to believe and what inferences it chooses to draw from those facts, but it is not required to do either. *Id.* at 165. Considering the conflicting evidence, and giving appropriate deference to the jury's verdict and its right to believe or disbelieve that evidence, we cannot say that the jury's verdict is "against the great weight and preponderance of the evidence."

---

[16]Merely because the State chooses not to cross-examine a witness, the jury is not required to believe that testimony. For example, even though Kelly and Margie both testified that Appellant was present solely to check on Kelly's welfare (leading to the inference that he was not there for any other purpose), the jury was free to believe or disbelieve that testimony.

[17]For purposes of our factual sufficiency analysis, we consider any inference of guilt to be drawn from such a statement as not rationally supporting a finding of guilt. *See footnote 10, supra.*

Evidence Supporting Verdict Too Weak

Appellant also contends the evidence was factually insufficient because the evidence supporting the verdict was just too weak. In support of this argument, he contends the verdict is "manifestly unjust, shocks the conscience, or clearly demonstrates bias," because other common links[18] are absent, and because other evidence tended to establish his innocence. In essence, Appellant contends that mere presence, proximity, and plain view are insufficient to support a finding of guilt.

As the Court of Criminal Appeal recognized in *Evans,* the absence of other potential links is a "weight of the evidence" determination, 202 S.W.3d at 164, and the absence of additional links does not diminish the significance of links that do exist. Furthermore, evidence that Kelly possessed the drugs does not lead to the exclusive "undisputable" inference that Appellant did not have joint possession of the same drugs. Likewise, evidence that Appellant had an innocuous purpose for being there does not mutually exclude the possibility that he also had a nefarious purpose for being there. Where undisputed evidence allows for more than one logical inference, the factfinder's choice between them cannot be erroneous. *Evans*, 202 S.W.3d at 163.

---

[18]*See* pgs. 6-7, *supra;* e.g., ownership or control of the place where the drugs were found; an odor indicating the presence of drugs; evidence of recent consumption of drugs; furtive gestures; incriminating statements; nervousness; the presence of drug paraphernalia on Appellant's person; or the possession of large sums of money.

16

Because the drugs were open, obvious, and in close proximity to Appellant, a rational juror could have found that he had knowledge of the drugs. Furthermore, based on the fact that there were multiple baggies of the controlled substance in plain view and steps were being taken to prepare the substance for immediate consumption, it could reasonably be inferred that both Kelly and Appellant were intending to use the drugs. These inferences alone were sufficient to allow a rational juror to find beyond a reasonable doubt that Appellant was exercising care, custody, or control over the drugs at the time Officer Sheffield arrived.

Applying the standards of review as set forth by *Clewis* and its progeny, we have carried out the judicially-imposed requirements for safeguarding a defendant's right to trial by jury, while giving appropriate deference to the jury's verdict and an examination of all the evidence, in order to prevent a manifest injustice. *See Lancon v. State*, 253 S.W.3d 699, 704 (Tex.Crim.App. 2008). Upon doing so, we cannot say that the verdict was manifestly unjust, that it shocks the conscience, or that it clearly demonstrates bias. Issue two is overruled.

## Conclusion

Accordingly, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Publish.

17