

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00118-CR

TRAVON LA SHAE GINN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 66,042-E, Honorable Douglas Woodburn, Presiding

March 31, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Travon La Shae Ginn, was indicted for the offense of possession with intent to deliver a controlled substance, phencyclidine (PCP), in an amount of four hundred grams or more.[1] Appellant was convicted of the offense following a jury trial, and the jury then assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for 17 years. Appellant has

---

[1] See TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (West 2010).

perfected his appeal and presents one issue to the Court. Therein, appellant contends that the evidence was legally insufficient to support the jury's verdict. We will affirm.

## Factual and Procedural Background

On September 2, 2012, appellant was travelling from Moreno Valley, California, to Oklahoma City, Oklahoma, when his vehicle was stopped for "failing to display a license plate." At the time of the stop, appellant was in the passenger seat, and the vehicle was being driven by Anthony Piggue. During the ensuing traffic stop, Department of Public Safety Trooper David Edwards began to suspect that there was some criminal activity connected to the vehicle and asked for and was granted permission to search the vehicle. As a result of the search, two plastic containers were discovered that contained the suspected contraband. Each plastic bottle was inside two vacuum-sealed plastic bags. The officers who found the contraband recognized that the liquid was leaking out of one of the bottles into the inner bag. This made the officers suspect the liquid was PCP. Ultimately, appellant was arrested, and the contraband was turned into the DPS Lab in Amarillo, Texas, where forensic testing proved that the liquid was PCP.

The jury returned a guilty verdict against appellant and assessed his punishment at confinement in the ID-TDCJ for 17 years. Appellant contends on appeal that the evidence was insufficient to support the jury's verdict. Specifically, appellant contends that the evidence was insufficient to show that appellant intentionally or knowingly "possessed" the contraband. We disagree and will affirm.

## Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899. If a reviewing court determines that the evidence is insufficient to establish any element of the offense, it must reverse and render a judgment of acquittal. *Dean v. State*, 449 S.W.3d 267, 268 (Tex. App.—Tyler 2014, no pet.) (citing *Cuddy v. State*, 107 S.W.3d 92, 95 (Tex. App.—Texarkana 2003, no pet.)); *see Saldana v. State*, 418 S.W.3d 722, 726 (Tex. App.—Amarillo 2013, no pet.).

Applicable Law

To prove possession of a controlled substance, the State is required to prove the accused (1) exercised actual care, custody, control, or management over the substance and (2) knew the matter he possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2014). The evidence must establish the accused's connection with the controlled substance was more than just fortuitous. *See Evans v. State,* 202 S.W.3d 158, 161 (Tex. Crim. App. 2005); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc).

If the appellant was not in exclusive possession of the contraband, the State is required to present evidence that affirmatively links appellant to the said contraband. *See id.* at 748. Courts have found numerous factors useful in determining whether an accused's link to a controlled substance was more than just fortuitous. Affirmative links may include, but are not limited to the following considerations: (1) whether the contraband was in plain view or recovered from an enclosed place; (2) whether the defendant was the owner of the premises or had the right to possess or control the place where the contraband was found; (3) whether the defendant was found in possession of a large amount of cash; (4) whether the contraband was conveniently accessible to the defendant; (5) whether the contraband was found in close proximity to the defendant; (6) whether an odor of contraband was present; (7) whether the defendant possessed other contraband when arrested; (8) whether the defendant possessed paraphernalia to use the contraband; (9) whether paraphernalia to use the contraband was available to or in plain view of the defendant; (10) whether the physical

4

condition of the defendant indicated recent consumption of the contraband in question; (11) whether conduct by the defendant indicated a consciousness of guilt; (12) whether the defendant made any incriminating statements when arrested; (13) whether the defendant attempted to flee; (14) whether the defendant made furtive gestures; (15) whether the defendant had a special connection to the contraband; (16) whether the persons present gave conflicting statements about relevant matters; (17) the quantity of the contraband discovered; (18) whether the defendant was armed; (19) whether the defendant was observed in a suspicious place under suspicious circumstances; (20) whether the accused was familiar or had previous experience with drugs; and, (21) whether any forensic evidence (e.g., fingerprints, DNA, etc.) connects the defendant to the contraband or its container. *Triplett v. State,* 292 S.W.3d 205, 209 (Tex. App.— Amarillo 2009, pet. ref'd). It is not the number of factors present that is important but the logical force of these factors which determines whether the State's evidence links appellant to the contraband. *See Evans,* 202 S.W.3d at 162.

Analysis

The vehicle in which appellant was a passenger was initially stopped for failure to display a license plate. Trooper Edwards was initially informed that the license plates, front and back, had been stolen. When Edwards opened the rear of the vehicle to begin his search, a license plate, later verified as belonging on the vehicle, fell out. Edwards asked appellant about this contradiction and was informed that appellant did not know why the license plate was in the rear of the car. This change of stories and response further raised Edwards' belief that there was some sort of criminal activity afoot surrounding the vehicle.

5

The amount of PCP found in appellant's vehicle weighed 1.29 kilograms or 1,290 grams. The testimony reveals that this would be considered a large amount of PCP. The contraband was found beneath the third row of seats in the vehicle in which appellant was a passenger. The third row seat was folded down flat and had the effect of extending the cargo area forward. The contraband was stored in a two plastic "Vitamin Water" bottles that had been double bagged in plastic vacuum-sealed bags. These bags were marked with the "Food Saver" brand logo.

There were numerous items of personal property located in the cargo area of the vehicle. From the record, we learn that the vehicle belonged to appellant's fiancée and that he had permission to drive it from California to Oklahoma City. Appellant admitted that the backpack found in the cargo area belonged to him. Inside that backpack were found a plastic vacuum sealer, vacuum bags bearing the "Food Saver" brand, a set of scales, latex gloves, and a power inverter. Testimony revealed that the power inverter could be used to run the vacuum sealer off of the cigarette lighter in the vehicle. Additionally, items of appellant's personal property, clothes, eye care products, and a watch were found in the backpack. During the search, another large roll of vacuum bags bearing the "Food Saver" brand was also found in the rear of the vehicle.

When Trooper Edwards stopped the vehicle for not displaying a license plate, he initially dealt with Piggue, who was then driving the vehicle. Edwards testified that Piggue was extremely nervous, breathing rapidly, and avoiding eye contact with the officer. According to the trooper's testimony, Piggue's hands were visibly shaking when he handed over his identification card. After asking Piggue to step from the car and taking him back to his patrol car, Edwards went back to the vehicle to ask permission to

search the vehicle. According to Edwards, appellant began by giving him excuses rather than simply granting consent to search or denying consent. Edwards observed appellant when the contraband was discovered and stated that appellant showed no surprise when the two bags were pulled from beneath the seat.

Agent William Brown of the DPS actually found the PCP and transported appellant to the DPS offices in Amarillo. Appellant advised Brown that he was coming from California to Oklahoma City and that they, appellant and Piggue, drove straight through without stopping to spend the night anywhere along the way. According to Brown, this would have taken approximately 15 hours.

Being mindful of our responsibilities as a reviewing court, we must view the evidence in the light most favorable to the jury's determination in order to ascertain whether a rational jury could have found all of the essential elements required to convict appellant beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. We apply this analysis to the totality of the facts in reviewing whether there is enough probative evidence to link appellant to the contraband in question. *See Evans,* 202 S.W.3d at 161; *Brown*, 911 S.W.2d at 747.

The evidence that links appellant to the contraband is as follows:

(1)     the contraband was discovered in a closed place;

(2)     appellant had a right of possession and control over the vehicle where the contraband was found;

(3)     the contraband was conveniently accessible to appellant;

(4)     the contraband was found in close proximity to appellant;

7

(5)     paraphernalia to use the contraband was discovered at the same time and in the same location;

(6)     personal property belonging to appellant was located in the same backpack as the paraphernalia;

(7)     appellant and Piggue both demonstrated significant nervousness when stopped, which along with the answers appellant provided regarding the license plate, could be properly viewed as a consciousness of guilt;

(8)     appellant admitted to owning the vacuum sealer and the vacuum bags, and the bags were "Food Saver" brand;

(9)     the plastic bottles containing the contraband were inside two vacuum-sealed bags that bore the "Food Saver" brand; and

(10)    the amount of contraband was large, indicating more than for personal use.

*See Triplett,* 292 S.W.3d at 209.  All of these links point directly, or circumstantially, to appellant as possessing the contraband.  *See Evans,* 202 S.W.3d at 161; *Brown,* 911 S.W.2d at 747.  Appellant's connection with the contraband was more than just fortuitous.  *See id.*

Appellant essentially contends that, because he produced testimony and evidence that would show the reason for the trip had nothing to do with the contraband and that he legitimately used some of the paraphernalia found in his ice cream truck business, the evidence is insufficient.  To accept appellant's position requires this Court to supplant the jury's function as the arbiter of the credibility of the evidence and the weight and value to be given to that evidence.  *See Brooks,* 323 S.W.3d at 899.  This we cannot do, as we are instructed to defer to the jury's findings in the area of credibility and weight and value of evidence.  *See id.*

Because we find there is sufficient evidence to link appellant to the contraband, we overrule appellant's contention to the contrary.

## Conclusion

Having overruled appellant's single contention, we affirm the trial court's judgment.

Mackey K. Hancock
Justice

Do not publish.