

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00108-CR

KATHRYN PENDLETON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 68,790-D, Honorable Abe Lopez, Presiding

October 23, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Kathryn Pendleton, was indicted for, and convicted of, the offense of possession of a controlled substance listed in Penalty Group 1 in an amount of four grams or more but less than 200 grams.[1] The trial court assessed punishment, pursuant to appellant's punishment election, at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for ten and one-half years. Appellant has perfected her appeal and brings forth two issues. First, appellant

---

[1] See TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2010).

contends that the evidence is insufficient to link her to the controlled substance. By appellant's second issue, she argues that the evidence is factually insufficient to sustain the conviction. We will affirm.

Factual and Procedural Background

In March of 2014, officers of the Amarillo Police Department received information from a confidential informant that drugs were being sold at a residence located at 1218 Pecan Street, Amarillo, Texas. After acquiring this information, the officers prepared a search warrant affidavit and search warrant to search the residence. A magistrate signed the warrant, and it was executed on March 31, 2014. Danny Ray Allen and Robert Earl Brown were the suspected persons listed in the search warrant. Appellant was not listed as one of those suspected of selling drugs in the warrant.

At appellant's trial, the testimony of the officers from the Amarillo Police Department revealed that appellant was found in the bedroom on the street side of the home. Officer Chris Holcomb testified that his job was to breach windows on the street side of the house. After breaching the window next to the front door, Holcomb then went to the converted garage bedroom and attempted to breach the window there. However, this did not provide any ability to see into the bedroom because the window was too high. Holcomb did pull a window air conditioner unit from a lower window and was able to observe appellant in the bedroom. He watched appellant running about in the bedroom, opening a metal container and retrieving two pill bottles from the inside. Appellant then ingested the contents of the pill bottles and was observed chewing the contents. Holcomb also observed appellant remove something from her bra and place what she had removed into her mouth. Appellant continued her efforts at ingesting

2

various materials despite repeated demands from Holcomb to cease and get on the floor. Further, Holcomb testified that appellant continued to roam about the room as if searching for something. He observed her take a purple cigar tube and pour the contents into her mouth.

The interior door to the bedroom had been locked, and it took a few moments for the search warrant team to force entry into the room. According to Holcomb's testimony, it was during this time span that appellant ingested the various items. Once the door was breached, appellant was subdued.

Officer Jaycin Smothermon entered the bedroom where appellant was and testified that, when he entered the room, appellant continued to disobey the commands given her. She appeared somewhat hysterical. At one point, appellant stated that she had just swallowed her high blood pressure medicine. While observing appellant, after she had been subdued, Smothermon noticed a piece of white rock-like substance on her bottom lip. Smothermon reached to retrieve the material and appellant tucked her lip under her front teeth and swallowed the material. During questioning at the scene, appellant advised Smothermon that her personal identification was in the closet of the bedroom. Knowing that appellant had been ingesting what the officers believed to be drugs, Smothermon notified a supervisor, and an ambulance was requested to take appellant to the hospital. Smothermon escorted appellant to the hospital.

At the hospital, appellant admitted to the nurse that she had ingested cocaine. Once appellant was released from the hospital and taken to the Potter County Detention

3

Center, appellant also admitted to the nurse at the detention center that she had ingested cocaine and, possibly, heroin.

When the search of the bedroom was conducted, the officers found a quarter of a cookie of crack cocaine in a beer stein and numerous items of drug paraphernalia. Officer Shea Lichtie testified about the items located in the bedroom where appellant was found. He testified that he found a crack pipe on the bed. According to his testimony, a crack pipe is used to smoke crack cocaine. Additionally, a loaded Winchester 240 shotgun was found under the mattress of the bed. The beer stein that contained the crack cocaine was located next to the bed in the northeast corner of the room. Inside the beer stein, the crack cookie was contained in a cellophane baggie. A box for a digital scale was found next to the beer stein. There was no digital scale in the box; however, there was a calibration weight inside the box.

Officer Thomas Newton was also on the search warrant team, and his initial job was to observe the house prior to execution of the warrant. He testified that he watched the house for over an hour prior to the warrant being executed. Newton testified that during this time he saw a number of people come to the house, stay for a short period, and then exit and leave. He opined that this was a typical traffic pattern when there are drug sales going on. Newton also searched the bedroom and located two sets of digital scales. One set was located on the nightstand near where the beer stein had been found. The other set of scales was located on the headboard of the bed.

The State also provided the testimony of the Department of Public Safety forensic examiner who tested the alleged cocaine cookie seized in the bedroom.

4

According to this testimony, the contraband was cocaine in a cooked state and had a weight of 5.90 grams.

Appellant testified on her own behalf. She testified that the cocaine she was ingesting on the date of the search warrant was her own personal cocaine. Further, appellant said she knew that Robert Brown was selling drugs but denied any connection to the drugs found in the beer stein and any personal involvement in the sale of drugs. Appellant admitted that, when she heard the search warrant team breach the front door, she became scared and locked the door to the bedroom. As to how her personal information came to be found in the closet of the bedroom, appellant testified that she was cleaning the room and had just begun to move her stuff into the room.

However, on cross-examination, appellant admitted that she lived in the room. She further admitted that she moved into the bedroom in February and that she had been living in the bedroom for at least four weeks prior to the warrant being executed on March 31, 2014. Additionally, appellant admitted that she had been convicted of a drug offense and placed on probation in 2000.

The jury subsequently convicted appellant of possession of a controlled substance in an amount of four grams or more but less than 200 grams. The trial court sentenced appellant to ten and one-half years' incarceration in the ID-TDCJ. This appeal followed.

Appellant now contends that there was insufficient evidence linking her to the drugs found at the scene of the search warrant. Further, appellant seems to contend

that the evidence is factually insufficient to support the jury's verdict. We disagree for the reasons hereinafter stated and will affirm.

## Sufficiency of the Evidence

Initially, we must address the effort of appellant and, for that matter, the response of the State to appellant's second issue. Through her second issue, appellant appears to be asking the Court to review the jury's verdict under a factual sufficiency standard of review. However, the Texas Court of Criminal Appeals has dismissed the factual sufficiency review in *Brooks v. State. See* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). There, the court held that the *Jackson v. Virginia*[2] standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Id.* Further, the court overruled all cases to the contrary. *Id.* We no longer have a factual sufficiency review in Texas and we will review the evidence in this case under the guidelines set forth in *Brooks.*

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. "[O]nly that evidence which is sufficient in character, weight, and amount to justify a fact finder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* (Cochran, J., concurring). When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906, 907 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

The sufficiency standard set forth in *Jackson* is measured against a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets forth the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* The "'law' as 'authorized by the indictment' must be the statutory elements of the offense" charged "as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)

Applicable Law

When, as in this case, the charge against an accused is possession of a controlled substance, the State is required to prove that appellant knowingly and

7

intentionally possessed a controlled substance in an amount of four grams or more but less than 200 grams. In order to prove the required element of possession, the State must show that the appellant (1) exercised "actual care, custody, control or management" of the controlled substance and (2) knew the matter possessed was contraband. *See* TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2014); *Poindexter v. State,* 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005).

In the situation where the appellant does not have exclusive possession of the controlled substance or the site where the controlled substance is found, such as we have in this case, we may not conclude or presume that the appellant had possession over the controlled substance unless there are other independent facts or links that tend to connect appellant to the knowing possession of the controlled substance. *Evans v. State,* 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). The mere presence of appellant at the scene where the controlled substance was found does not, in and of itself, make her a party to the possession of those controlled substances. *See Triplett v. State,* 292 S.W.3d 205, 208 (Tex. App.—Amarillo 2009, pet. ref'd). Because mere presence does not furnish the link to establish that appellant's connection with the controlled substance is anything more than merely fortuitous, the State must present direct or circumstantial evidence to establish the link between appellant and the controlled substance. *See Evans*, 202 S.W.3d at 161. As pointed out in *Poindexter,* the rule requiring linkage between appellant and the controlled substance is designed to protect the innocent bystander from conviction because they were within proximity of someone else's illegal contraband. *See Triplett,* 292 S.W.3d at 208.

Courts have found numerous factors useful in determining whether an accused's link to a controlled substance was more than just fortuitous. Affirmative links may include, but are not limited to the following considerations: (1) whether the contraband was in plain view or recovered from an enclosed place; (2) whether the defendant was the owner of the premises or had the right to possess or control the place where the contraband was found; (3) whether the defendant was found in possession of a large amount of cash; (4) whether the contraband was conveniently accessible to the defendant; (5) whether the contraband was found in close proximity to the defendant; (6) whether an odor of contraband was present; (7) whether the defendant possessed other contraband when arrested; (8) whether the defendant possessed paraphernalia to use the contraband; (9) whether paraphernalia to use the contraband was available to or in plain view of the defendant; (10) whether the physical condition of the defendant indicated recent consumption of the contraband in question; (11) whether conduct by the defendant indicated a consciousness of guilt; (12) whether the defendant made any incriminating statements when arrested; (13) whether the defendant attempted to flee; (14) whether the defendant made furtive gestures; (15) whether the defendant had a special connection to the contraband; (16) whether the persons present gave conflicting statements about relevant matters; (17) the quantity of the contraband discovered; (18) whether the defendant was armed; (19) whether the defendant was observed in a suspicious place under suspicious circumstances; (20) whether the accused was familiar or had previous experience with drugs; and, (21) whether any forensic evidence (e.g., fingerprints, DNA, etc.) connects the defendant to the contraband or its container. *See id.* at 209. It is not the number of factors present that is important but the logical

9

force of these factors which determines whether the State's evidence links appellant to the contraband. *See Evans,* 202 S.W.3d at 162.

<u>Analysis</u>

From the record before us, we find evidence that shows that appellant was the sole occupant of the room when the search warrant was executed. Upon hearing the police enter the house, appellant began looking for drugs in the room. Appellant then consumed the drugs that she found. Appellant locked the door to the bedroom which then delayed the entry of the police into that room. Appellant admitted that she had moved into the bedroom sometime in February 2014, which was several weeks before the warrant was executed. Her personal identification was found in the closet in the bedroom. Appellant acknowledged knowing that crack cocaine was being sold out of the residence. The crack cocaine was found in a beer stein located adjacent to the only bed in the room. That beer stein was conveniently accessible to appellant. Paraphernalia for the use and distribution of cocaine was found in plain view in the room. On the day of the search warrant, activity consistent with drug sales occurred in the house in the hour or so immediately preceding the execution of the search warrant. Appellant admitted that she was in possession of cocaine at the time the warrant was executed. Appellant also admitted that she had been previously convicted of a drug offense in 2000.

All of the links recited in the foregoing paragraph provide the type of connection back to appellant, either directly or circumstantially, to prove the elements of the

offense. *See id.* at 161. Appellant's connection to the crack cocaine was more than just fortuitous. *See id.*

Appellant's major contention is that, because the actual crack cocaine cookie was found inside the beer stein and because she was not aware of its presence, she could not have been in possession of said crack cocaine. This is simply one of the many pieces of evidence that the jury had for consideration. We do not focus on one bit of evidence; rather, it is the logical force behind the cumulation of evidence that carries the question. *See id.* at 162. Further, appellant's denial of any knowledge of the contents of the beer stein was a matter for the jury to weigh, as they are the arbiters of weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899.

Appellant continues to list approximately 20 other purported pieces of connecting evidence that do not tie appellant to the crack cocaine or the drug sales occurring at the Pecan Street house. However, most, if not all, of these absent pieces of evidence cited by appellant, are subject to the jury's view about the credibility of appellant's testimony or resolution with contrary evidence. *See id.* By way of example, appellant claims that she was not found in close proximity to the crack cocaine, and, in fact, she was moving away from it. However, the jury heard that all of appellant's activity during the search was confined to a small bedroom. While she may have been moving from one area of the bedroom to the other, a jury could still find that she was found in close proximity to the crack cocaine. Likewise, as a circumstance that does not show a link to the contraband, appellant points out that she did not possess other contraband when arrested. As a statement of fact about a very specific point in time, the moment of her arrest, the statement is true. However, the record reveals that the reason it is true is

because appellant ingested the contraband that she could get her hands on. Appellant admitted as much to at least two medical professionals, and the action was viewed by one of the officers. So, it is not difficult to see why the jury could have found that appellant was, in fact, in possession of other contraband when arrested despite the evidence appellant cites in support of her contention.

When all of the evidence is viewed in the light most favorable to the jury's verdict, which we must do in an evidentiary sufficiency review, we conclude that the jury's finding of guilt was a rational finding. *See id.* at 917. Therefore, appellant's issue to the contrary is overruled.

Our decision regarding appellant's first issue and the fact that Texas does not recognize factual sufficiency review pretermit any consideration of appellant's second issue. *See* TEX. R. APP. P. 47.1.

### Conclusion

Having overruled appellant's issue, we affirm the judgment of the trial court convicting appellant.

Mackey K. Hancock
Justice

Do not publish.

12