

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00187-CR

---

RAMON LEDANTE RUCKER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 106th District Court
Garza County, Texas
Trial Court No. 23-4125, Honorable Reed A. Filley, Presiding

---

March 11, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Ramon Ledante Rucker, was convicted following a jury trial of knowingly possessing with intent to deliver, a controlled substance (hydrocodone) in an amount of 400 grams or more.[1]  By his sole issue, Appellant argues that the evidence is insufficient to support his conviction.  We reform and affirm the judgment of the trial court.

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.112(a)(f).

## BACKGROUND

On December 1, 2022, Texas Department of Public Safety Trooper Ricky Walters was on patrol in Garza County. Using his radar unit, he clocked Appellant's sports utility vehicle, a silver-gray Honda, at seventy-nine miles per hour in an area where the posted speed limit was seventy-five miles per hour. Walters performed a traffic stop and determined that the vehicle was a rental with a California registration. Appellant told Walters that he had been in California and was driving back to Houston. Walters smelled what he thought was an odor of marijuana emanating from the vehicle although "[he] wasn't 100 percent sure." After Appellant denied consent for Walters to search the vehicle, Walters requested a canine unit to come to the scene. Trooper Suzane Esparza arrived in five minutes and her drug dog alerted on the driver's side of Appellant's vehicle. A search of the vehicle ensued, and a passenger was discovered in the back seat under some blankets. The passenger was identified as Clifton Lavonichik Dallas, from Houston. During the search, bits and pieces of marijuana were found throughout the vehicle along with several items of dark-colored men's clothing. In a compartment where the spare tire was stored, Walters found a pillowcase that contained sixty-one large "pharmacy type" bottles of hydrocodone, OxyContin, and Vyvanse. Appellant and his passenger were arrested.

In January of 2023, an indictment issued alleging that, on December 1, 2022, Appellant knowingly possessed, with intent to deliver, a controlled substance, hydrocodone, in an amount of four hundred grams or more. The indictment also alleged two prior felony convictions. Following a jury trial, Appellant was convicted and, after pleading true to two enhancements, was sentenced to ninety-nine years' confinement.

2

At trial, a DPS lab analyst testified that he tested two bottles that Trooper Walters recovered from Appellant's vehicle. The bottles were factory sealed, labeled from the manufacturer, and each bottle contained 100 to 500 pills. The bottles contained hydrocodone with the tablets in one bottle weighing 210 grams and the tablets in the other bottle weighing 216 grams.

Special agent Tommy "Lance" Wheeler with the Drug Enforcement Administration testified that he investigated multiple burglaries of small "mom-and-pop" pharmacies in South Dakota and Oregon that occurred during November of 2022. Wheeler obtained cell phone records and cell tower data which showed that on November 20, 2022, a cell phone registered to Appellant at his Houston address travelled from Houston to South Dakota and returned to Houston. Appellant's phone pinged cell towers in South Dakota around the time and near the location of four pharmacies that were burglarized. Likewise, on November 28–29, 2022, Appellant's cell phone was tracked from Houston to Oregon. On November 30, 2022, two pharmacies in Oregon were burglarized and bottles containing hydrocodone, oxycodone, and Vyvanse were stolen. Video surveillance from one of those pharmacies depicted three male suspects in a small silver SUV. The vehicle driven by Appellant when he was arrested in Post was rented from the Houston area and matched the description of the vehicle used in the Oregon burglary. The controlled substances located in the vehicle's tire compartment were consistent with the same substances taken from one of the pharmacies in Oregon. Data from Appellant's cell phone indicated it was in the location of both Oregon pharmacy burglaries. Appellant's cell phone was tracked from Oregon to Texas with the phone pinging a cell phone tower

3

near Post on December 1, consistent with the time of Appellant's arrest. Appellant's cell phone did not ping on any cell towers in California.

In his testimony, Appellant denied that he had ever been to South Dakota or Oregon. According to Appellant, he had been in California at a work site, and after the job ended, he was returning to Houston when he was stopped in Post. Appellant claimed that he had not seen the pills before the stop. He said that he had never been to the back of the vehicle and was unaware of the tire storage compartment.

## STANDARD OF REVIEW

The standard we apply in determining whether the evidence is sufficient to support a conviction is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, we consider all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). Sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In our review, we must evaluate all the evidence in the record, both direct and circumstantial, regardless of whether that evidence was properly or improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We are also required to

4

defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). When the record supports conflicting inferences, we presume that the jury resolved any conflicts in favor of the verdict and will defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

## APPLICABLE LAW

A person commits the offense of possession of a controlled substance with intent to deliver it if the person knowingly possesses with intent to deliver a controlled substance and the amount of the controlled substance is, by aggregate weight, including adulterants or dilutants, more than four hundred grams. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (f). To prove unlawful possession of a controlled substance, the State had to establish that the defendant: (1) exercised care, control, or management over the contraband; and (2) knew the matter possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). "Possession" under the Penal Code "means actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39). When, as here, the accused does not have exclusive possession of the vehicle in which the controlled substance was found, it cannot be concluded or presumed that the accused had possession over the contraband unless there are additional independent facts or circumstances that tend to connect or link the accused to the knowing possession of the contraband. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Mere presence of a defendant at the scene of an offense does not make one a party to joint possession. *Herndon v. State*, 787 S.W.2d 408, 410 (Tex. Crim. App. 1990) (citing *Rhyne*

5

*v. State*, 620 S.W.2d 599, 601 (Tex. Crim. App. 1981)).  While some links, including presence, may show knowledge of illegal activities, presence alone does not furnish the connection necessary to establish that a defendant knowingly possessed the contraband. *Id.*  Regardless of whether the evidence is direct or circumstantial, in addition to mere presence, the State's case must establish some link between the defendant and the controlled substance which is more than fortuitous.  *Evans,* 202 S.W.3d at 161.

There are numerous factors that have been recognized as contributing to an evaluation of whether an accused "possesses" or is linked to the contraband.  *Triplett v. State*, 292 S.W.3d 205, 208 (Tex. App.—Amarillo 2009, pet. ref'd).  Those links include, but are not limited to: (1) the defendant's presence when a search is conducted; (2) whether the contraband is in plain view; (3) the defendant's proximity to and accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made any incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made any furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12; *see Triplett*, 292 S.W.3d at 209.  These factors, however, are simply that—factors which may or may not circumstantially establish the sufficiency of evidence offered to prove the knowing "possession" of a controlled substance.  *Evans,*

6

202 SW.3d at 162 n.12 (factors "are not a litmus test."). Moreover, there is no set formula that an appellate court can use to determine if there are sufficient links to support an inference of knowing possession of drugs. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App—Dallas 2003, no pet.). Each case must be examined according to its own facts on a case-by-case basis. *Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). The number of links is not as important as the combined logical force of all the evidence tending to link the accused to the contraband. *Evans*, 202 S.W.3d at 162, 166.

## ANALYSIS

The evidence in this case sufficiently links Appellant to the possession of the hydrocodone. Appellant was the driver of the vehicle in which the controlled substances were found and was present when the search was conducted. Other contraband, bits and pieces of marijuana, was found near the driver's seat and throughout the vehicle. A cell phone registered to Appellant at his apartment address in Houston was tracked twice in November of 2022 to the locations of multiple pharmacy burglaries in South Dakota and Oregon. The vehicle driven by Appellant when he was stopped in Post matched the description of the vehicle seen on surveillance footage near one of the pharmacy burglaries in Oregon. The clothing found in the back of Appellant's vehicle was similar to the description of the clothing worn by the suspects in the Oregon pharmacy burglary. The controlled substances recovered in Post were virtually identical to the pharmaceuticals stolen from a pharmacy in Oregon. The timeframe from the Oregon burglary to the recovery of the contraband in Post was consistent with car travel from Oregon to Post. The large quantity of controlled substances found in Appellant's vehicle,

7

sixty-one pharmacy-type bottles, with a resale value of over $50,000, was more consistent with distribution as opposed to personal use. The logical force of this combined evidence was enough to permit a jury to rationally infer, beyond a reasonable doubt, that Appellant knowingly possessed the hydrocodone with intent to deliver it. *See Sepulbeda v. State*, No. 07-18-00239-CR, 2019 Tex. App. LEXIS 10241, at *8 (Tex. App.—Amarillo Nov. 25, 2019, pet. ref'd) (mem. op., not designated for publication).

### REFORMATION OF JUDGMENT

In conducting our review, we noted an error in the judgment. The judgment identifies the "Statute for Offense" as Texas Health and Safety Code section 481.114(e). However, the indictment, judgment, and record correctly indicate that Appellant was tried for and convicted of manufacture or delivery of a substance in penalty group 1, which is an offense under Texas Health and Safety Code section 481.112(a). We are authorized to reform judgments *sua sponte* to make the record speak the truth. "The Texas Rules of Appellate Procedure give us authority to reform judgments and correct typographical errors to make the record speak the truth." *Torres v. State*, No. 07-13-00179-CR, 2014 Tex. App. LEXIS 2664, at *4–5 (Tex. App.—Amarillo Mar. 7, 2014, no pet.) (mem. op., not designated for publication) (citing TEX. R. APP. P. 43.2, and *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (en banc)). Consequently, we reform the judgment to delete the identification of "481.114(e)HSC" as the statute of conviction and insert an identification of Texas Health and Safety Code section 481.112(a), (f), as the "Statute for Offense."

## CONCLUSION

Based on the totality of the evidence presented, we find sufficient links exist between Appellant and the hydrocodone found in the vehicle to determine the evidence is sufficient to support his conviction for possession with intent to deliver a controlled substance in an amount of 400 grams or more. We reform the judgment to delete the identification of Texas Health and Safety Code section 481.114(e) as the "Statute for Offense" and instead identify Texas Health and Safety Code section 481.112(a), (f). We overrule Appellant's sole issue and, as reformed, affirm the trial court's judgment.

Judy C. Parker
Justice

Do not publish.

9