

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-16-00145-CR

---

CHARLA JEANNE THOMPSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1414473D, Honorable Ruben Gonzalez, Jr., Presiding

---

November 18, 2016

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

A jury convicted appellant Charla Jeanne Thompson of possession of one gram or less of a controlled substance, methamphetamine, and assessed punishment at nine years' confinement in prison and a fine of $10,000.[1] The trial court imposed sentence accordingly. Through a single issue on appeal, appellant argues the evidence was

---

[1] Possession of less than one gram of methamphetamine is a state jail felony. TEX. HEALTH AND SAFETY CODE ANN. § 481.112(a),(b) (West 2010). Punishment here was enhanced to a third-degree felony based on appellant's two prior state jail felony convictions. TEX. PENAL CODE ANN. § 12.425(a) (West Supp. 2016).

insufficient to prove appellant knowingly possessed the contraband. Finding the proof of this element of the State's case-in-chief was sufficient, we will overrule appellant's issue and affirm the judgment of the trial court.

## Background

Around 8:00 a.m. on May 15, 2015, the Fort Worth police department received a call reporting a suspicious person outside a house. The caller lived across the street from the house and testified at trial he saw a female walking around the house. She was knocking and banging on the door and trying to enter through the windows. After this had gone on for forty-five minutes to an hour, the caller telephoned the police. According to the caller's testimony, police were often at the house because of "domestic violence, fighting, yelling, screaming." Two officers were dispatched to investigate the caller's report. One of them testified at trial.

At the house, the officers found a female sitting on the front porch steps. She told the testifying officer she had a driver's license but it was suspended. She also said she was waiting for a friend, but was unable to provide the friend's name. The officer agreed on cross-examination that the woman told him her bicycle was broken, she was acquainted with the person who lived in the house, and she needed to use the telephone.

While speaking with the woman, the officer noticed a white styrofoam cup sitting nearby on the porch. The cup contained what the officer described as "dirty pond water. Like slimy, green, gross."

After verifying the spelling of the woman's name, the testifying officer went to his patrol car to run a background check. His initial search failed to identify a suspended driver's license in the name given him but, accessing other records, the officer learned the woman had outstanding arrest warrants. At trial, he identified the woman as appellant.

During his computer search, the officer testified, he maintained visual contact with appellant. Though he could not see her whole body from his patrol car, he could see appellant from "about jaw line up." Asked if he saw "anyone else approach the porch area," the officer responded, "Not at all. Not at all. There was no one else in the given area." He also told the jury he "would have been able to see anybody approach the house, or anybody walk out of the front door of the house, I would have been able to see." After learning of the outstanding warrants, he returned to the porch to arrest appellant.

As he placed appellant in handcuffs, the officer noticed spilled water around the white styrofoam cup and that a "full-size sandwich baggie" was now sticking out of the cup. The officer thought this "quite odd" since he "kn[ew] for a fact" the baggie was not in the cup when he initially encountered appellant. Wearing gloves, the second officer removed the baggie from the cup. The testifying officer observed the baggie contained a substance he believed was methamphetamine. A same-day test at the jail and subsequent analysis by a forensic scientist proved the officer's preliminary assessment correct. During his testimony, the officer performed a demonstration of the cup and baggie for the jury using a paper cup taken from counsel table and a tissue.

The testifying officer transferred the contents of the baggie to an evidence bag but did not preserve the baggie, believing it a "biohazard." The styrofoam cup was also not preserved. Photographs of the baggie and the cup were not made.

The officer agreed on cross-examination there was no report that appellant was intoxicated at the time of the encounter. When asked later during cross-examination if appellant appeared intoxicated the officer said she was "tweaking."[2]

Analysis

As noted, in her sole issue appellant argues the evidence was insufficient to prove she knowingly possessed the contraband. In the indictment the State alleged appellant "intentionally or knowingly possess[ed] a controlled substance, namely methamphetamine, of less than one gram, including adulterants or dilutants[.]"

In determining whether the evidence is sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319. Circumstantial

---

[2] The term "tweaking" has been used to designate a phase of methamphetamine use. *See Durham v. State,* No. 10-04-00248-CR, 2005 Tex. App. LEXIS 8826, at *42 (Tex. App.—Waco Oct. 26, 2005, pet. refused) (mem. op.).

4

evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt. *Carrizales v. State,* 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Evans v. State,* 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2016). Possession means "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38); TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2016). A person commits a possessory offense only if she voluntarily possesses the prohibited item. TEX. PENAL CODE ANN. § 6.01(a) (West 2011). Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of her control of the thing for a sufficient time to permit her to terminate her control. TEX. PENAL CODE ANN. § 6.01(b).

When the accused is not in exclusive control of the place where the contraband is found, the State must establish care, custody, control, or management by linking the accused to the substance through additional facts and circumstances. *Evans,* 202 S.W.3d at 161-62; *Poindexter v. State,* 153 S.W.3d 402, 406 (Tex. Crim. App. 2005), *overruled on other grounds by Robinson v. State,* 466 S.W.3d 166, 173 n.32 (Tex. Crim. App. 2015). Whether the State's evidence is direct or circumstantial, its evidence of links must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Poindexter,* 153 S.W.3d at 405-06 (citing

5

*Brown v. State, 9*11 S.W.2d 744, 747 (Tex. Crim. App. 1995)); *Park v. State,* 8 S.W.3d 351, 353 (Tex. App.—Amarillo 1999, no pet.).

The many factors by which an accused may, under the unique circumstances of each case, be sufficiently "linked" to the contraband, include: (1) the defendant's presence when a search is conducted; (2) whether the contraband is in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans,* 202 S.W.3d at 162 n.12. *See Triplett v. State,* 292 S.W.3d 205, 208 (Tex. App.—Amarillo 2009, pet. refused) (listing numerous factors). These factors, however, are simply that: factors which may circumstantially establish the sufficiency of evidence offered to prove a knowing "possession." *See Evans,* 202 S.W.3d at 162 n.12 (explaining that factors "are not a litmus test"). It is not the number of links that is dispositive, but rather the logical force of all the evidence. *See id.* at 162.

For the argument that the evidence of her possession of contraband was insufficient because the proof failed to sufficiently link her to the contraband, appellant

6

relies chiefly on cases such as *Oaks v. State,* 642 S.W.2d 174 (Tex. Crim. App. 1982) and *Hernandez v. State,* 517 S.W.2d 782 (Tex. Crim. App. 1975).[3] While these cases deal with questions of the sufficiency of proof under circumstances where the accused was not in exclusive possession of the contraband or the location, we do not find any of them sufficiently analogous to guide our decision.[4] Particularly, in none of them did the reviewing court find the character and quality of proof here presented by the State.

The testifying officer encountered appellant on the steps of the house and at that time first observed the styrofoam cup in plain view. The foul appearance of the water in the cup caught his attention. Without equivocation he testified the cup did not contain the baggie, nor was there spilled water around the cup, at that point in time. The officer maintained sight of appellant's head and the porch area while checking records in his patrol car. No one was present on the porch but appellant. The officer returned to

---

[3] She cites also *Schultz v. State,* 502 S.W.2d 817 (Tex. Crim. App. 1973); *Haynes v. State,* 475 S.W.2d 739 (Tex. Crim. App. 1971); *Allen v. State,* 249 S.W.3d 680 (Tex. App.—Austin 2008, no pet.); and *Meyers v. State,* 665 S.W.2d 590 (Tex. App.—Corpus Christi 1984, pet. refused). She also generally cites *Martin v. State,* 753 S.W.2d 384 (Tex. Crim. App. 1988) and *Meeks v. State,* 692 S.W.2d 504, 511 (Tex. Crim. App.1985).

[4] Parenthetically, most of these cases predate *Geesa v. State,* 820 S.W.2d 154 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State,* 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). In *Geesa* the Court of Criminal Appeals abandoned the alternative-reasonable-hypothesis sufficiency analysis that required "[a] conviction based on circumstantial evidence [to] exclude every other reasonable hypothesis except the guilt of the accused." *Carlsen v. State,* 654 S.W.2d 444, 447 (Tex. Crim. App. 1983), *overruled by Geesa,* 820 S.W.2d at 161. Courts now examine both direct and circumstantial evidence in the same manner; reasonable inferences are not disregarded when drawn from circumstantial evidence. *Anderson v. State,* No. 02-15-00405-CR, 2016 Tex. App. LEXIS 4187, at *9-10 (Tex. App.—Fort Worth Apr. 21, 2016, no pet.) (mem. op.) (not designated for publication) (citing *Dobbs v. State,* 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *Acosta v. State,* 429 S.W.3d 621, 625 (Tex. Crim. App. 2014); and *Hearne v. State,* 80 S.W.3d 677, 680 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).

arrest appellant for outstanding warrants. As he placed her in handcuffs he saw the cup now contained the baggie and saw the spilled water near the cup. Appellant was in near proximity to the cup and no one else had access to the cup from the officer's perspective until he returned from the patrol car. In other words, the area was in appellant's exclusive possession at that time. *Cf. Mesa v. State,* No. 13-10-00604-CR, 2011 Tex. App. LEXIS 8358, at *12-13 (Tex. App.—Corpus Christi Oct. 20, 2011, no pet.) (mem. op., not designated for publication) (finding fact that defendant exclusively possessed vehicle when contraband was located significantly linked defendant to contraband).

As fact finder, the jury was the sole judge of the credibility of the witnesses and was entitled to believe all, some, or none of the testimony presented. *Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We may not reweigh the evidence or second-guess the jury's credibility determinations. *Perez v. State,* No. 07-11-00249-CR, 2012 Tex. App. LEXIS 2647, at *9-10 (Tex. App.—Amarillo Apr. 4, 2012, no pet.) (mem. op., not designated for publication).

Appellant exercised her right not to testify and did not present a case-in-chief in defense. The only narrative of the events the jury heard thus was from the officer. If accepted, the officer's testimony without question allowed the jury to infer appellant put the baggie in the cup, and spilled the water doing so. Viewing all of the evidence under the required standard, we conclude the jury was free to conclude appellant knowingly possessed the methamphetamine. We overrule appellant's issue on appeal.

8

Conclusion

Having overruled appellant's issue, we affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.