

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00242-CR
_____

LANCE CHRISTOPHER WOODWARD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Court No. 16-23994; Honorable Larry Gist, Presiding

May 21, 2018

## MEMORANDUM OPINION

Before CAMPBELL, PIRTLE, and PARKER, JJ.

Appellant, Lance Christopher Woodward, was convicted following a jury trial of possession of a controlled substance, to-wit: methamphetamine, in an amount of at least four grams or more but less than 200 grams.[1] The range of punishment was enhanced

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2017). An offense under this section is a second degree felony.

by a prior felony conviction and the jury assessed his punishment at forty years confinement.[2] On appeal, Appellant asserts nine issues: (1) the evidence is legally insufficient to support his conviction, and the trial court erred when it (2)-(7) denied Appellant's motion to suppress evidence due to an illegal detention, (8) refused his request to strike that portion of the jury charge permitting him to be convicted as a party to the offense, and (9) denied his request for a jury instruction pursuant to article 38.23(a) of the Texas Code of Criminal Procedure.[3] We affirm.

BACKGROUND

In January 2016, an indictment issued alleging that on or about October 22, 2015, Appellant intentionally and knowingly possessed methamphetamine, a controlled substance listed in Penalty Group I of the Texas Controlled Substances Act, in an amount of at least four grams or more but less than 200 grams. In May 2016, Appellant filed an amended motion to suppress evidence on various grounds including an argument that he was illegally detained by law enforcement officers. Appellant also sought to suppress a search warrant allowing the placement of a GPS tracking device on his car and the underlying affidavit. Although there was testimony at trial regarding the search warrant itself, neither the search warrant nor the affidavit was introduced into evidence by either party.

---

[2] Appellant plead true to an enhancement alleging a prior conviction for possession of a controlled substance, a second degree felony, and his range of punishment was enhanced to that of a first degree felony. *See* TEX. PENAL CODE ANN. § 12.42(b) (West Supp. 2017).

[3] Originally appealed to the Ninth Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Ninth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

The State's evidence at trial established that in the fall of 2015, Appellant was being surveilled by the Jefferson County Narcotics Task Force. While conducting surveillance, detectives observed that he customarily drove a white Ford Expedition. Although the vehicle was registered in his mother's name, Appellant was its sole operator. Because Appellant engaged in evasive maneuvers while being surveilled, the Task Force obtained a warrant for a GPS tracking device, and on October 21, a GPS tracker was placed on the vehicle.

The next day, the tracking device alerted detectives to the fact that the vehicle was moving from Beaumont, Texas, in Jefferson County to Houston, Texas, in Harris County. While in the Harris County area, the vehicle stopped for fifteen to twenty minutes and then drove back towards Jefferson County on I-10. When Appellant came to Winnie, Texas, however, he exited I-10 and began taking a circuitous route on back roads towards Jefferson County. Eventually, he turned on FM 365 in the direction of Nome, Texas. A Task Force detective alerted Deputy Alan Burleson[4] that a possible narcotics carrier was driving through the county, gave him a description of Appellant's vehicle, and informed him as to its current location.

Originally, Deputy Burleson set up on I-10 (the most direct route from Houston to Jefferson County), with Deputy James Burleigh, to wait for Appellant. The deputies were subsequently informed that Appellant was taking the back roads on his return. Although one of the reasons for conducting a traffic stop was the Task Force's drug investigation,

---

[4] Prior to joining the Jefferson County Sheriff's Office, Deputy Burleson was a DPS trooper for eight years. For five of the eight years, his duties were primarily related to criminal interdiction where he looked for criminal activity related to drugs and narcotics trafficking on state highways.

the deputies were told to develop their own probable cause to stop Appellant's vehicle and conduct their own investigation. The two deputies eventually caught up with Appellant on FM 365.

At approximately 11:30 p.m., the deputies stopped Appellant's vehicle for exceeding the speed limit and having a DVD screen on the dashboard in the driver's view.[5] When the deputies approached the vehicle, they observed Appellant and a female passenger.[6] After Appellant exited his vehicle at Deputy Burleson's request, he indicated he did not have a driver's license and had lost his identification card. He told the deputy that the vehicle belonged to his mother. He also told Deputy Burleson that he was going to his mother's house but that he did not talk to her. Additionally, he could not recall the name of his passenger. At approximately 11:35 p.m., Deputy Burleson informed Appellant that he would be receiving two warnings, one for the speeding violation and a second for the DVD screen. On further questioning, Appellant indicated that he was coming from Winnie where he had purchased some speakers for his vehicle.

During his interaction with Appellant, Deputy Burleson thought it odd that Appellant was driving his mother's vehicle to her house, but that he never spoke to her and he could not recall the name of his female passenger. He observed that Appellant was very nervous. In most instances, Deputy Burleson had observed that a driver would relax after finding out that he would be receiving a warning rather than a ticket, but in Appellant's

---

[5] *See* TEX. TRANSP. CODE ANN. §§ 545.351, 547.611 (West 2011) (enforcement of maximum speed requirements and prohibition of the use of video equipment visible from the driver's seat, respectively). Appellant does not challenge the validity of the traffic stop on appeal.

[6] Members of the Task Force remained at a nearby gas station.

4

case, his nervousness escalated. His hands were shaking, and he was repeatedly counting his fingers. He could also see Appellant's carotid artery pounding in his neck indicating that his heart was pounding. In his interactions with Appellant, Deputy Burleigh also noticed that Appellant was very nervous while his passenger was calm. He described Appellant as "real fidgety" and he could see Appellant breathing "really heavy while speaking to him." Deputy Burleson then asked if Appellant would consent to a search of his vehicle, which request was refused. Appellant told the deputy that he had recently been stopped and his vehicle searched by the Beaumont Police Department. At approximately five minutes into the stop (11:35 p.m.), Deputy Burleson requested a K9 unit.

Approximately six minutes into the traffic stop (11:36 p.m.), Deputy Burleson received a negative return from dispatch on Appellant's license. He then approached the passenger, Crystal Wiggins. She described Appellant as a friend and indicated they were coming from Houston. When Deputy Burleson informed her that Appellant said they were coming from Winnie, she revised her response to indicate that they stopped in Winnie for her to use the restroom. Wiggins exited Appellant's vehicle and sat in the grass drawing designs for tattoos. While conversing with the deputies, Appellant again indicated that he had been stopped recently by the Beaumont Police Department, his vehicle had been searched, and he had been released. Fourteen minutes into the traffic stop (11:44 p.m.), Deputy Burleson received a return on Wiggins and discovered that she had five warrants for traffic violations.

During the next fifteen minutes (11:44 to 11:59 p.m.), Deputy Burleson checked on the status of the K9 unit and continued to question Appellant. Appellant and Wiggins

5

requested cigarettes and the deputy, with Wiggin's permission, retrieved cigarettes from her purse. He then gave her a cigarette and brought the pack to Appellant. Deputy Burleson also offered to let Appellant sit in the back of his patrol car. Wiggins remained sitting on the ground.

Two minutes later (12:01 a.m.), Deputy Burleson checked for confirmation on insurance for Appellant's vehicle and began writing Appellant a ticket for driving without a license. He then received a negative return on the vehicle as being insured. Ten minutes later (12:11 a.m.), the K9 unit arrived and the dog alerted to the window on the driver's side of the vehicle. In total, per the video recorded by Deputy Burleson's patrol car, Appellant was detained approximately forty-one minutes from the beginning of the traffic stop, until the K9 unit arrived (11:30 p.m. to 12:11 a.m.).

Earlier, at approximately 11:35 p.m., Lieutenant Tony Viator received a call from dispatch requesting that he bring his dog to the traffic stop.[7] Both he and his dog were asleep at the time. He got up, dressed, loaded his dog, and headed in the direction of the traffic stop. Lieutenant Viator lived in Winnie and the stop was closer to Nome—thirty minutes away. When he arrived (thirty-six minutes later) at 12:11 a.m., he was directed to Appellant's vehicle. When the dog came to the driver's door, she jumped up on the door and gave a scratch indicating she alerted to an odor coming from the open window on the driver's door.

When he searched the vehicle, Deputy Burleson located a bag containing five ounces of methamphetamine in a hidden compartment below the console between the

---

[7] Lieutenant Viator was called as backup because the closest K9 unit in Beaumont was unavailable.

driver and the passenger seats. To access the compartment, a screw had been removed permitting the console to be raised. Beneath a plastic shield under the console was the compartment where the controlled substance was found. Deputy Burleson testified that although the compartment was easily accessed, one had to know to raise the console door and pull the console back to access the compartment containing the methamphetamine. He also testified that, from the appearance of the console, it had been disturbed numerous times. After the methamphetamine was discovered, Appellant was placed under arrest.

Issue ONE—SUFFICIENCY OF THE EVIDENCE

Appellant asserts the evidence that he "possessed" methamphetamine was insufficient to support his conviction because the State failed to establish any affirmative link between him and the methamphetamine found in the hidden compartment in the console of the vehicle he was driving. We disagree.

STANDARD OF REVIEW

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 33 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at

7

319; *Brooks*, 323 S.W.3d at 912. This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

Further, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). In evaluating the sufficiency of the evidence we may not re-evaluate the weight and credibility determinations made by the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Thus, we must resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

APPLICABLE LAW

To support the verdict rendered in this case, the State was required to prove that Appellant knowingly possessed a controlled substance, to-wit: methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. 481.115(d) (West 2017). To prove *possession*, the State was required to show that Appellant (1) exercised "actual care, custody, control, or management" of the substance and (2) knew the matter possessed was contraband. *See* TEX. PENAL CODE ANN. § 1.07(39) (West Supp. 2017); *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005).

There are numerous nonexclusive factors that, under the unique circumstances of each case, have been recognized as contributing to an evaluation of whether an accused "possesses" or is linked to the contraband. *See Triplett v. State*, 292 S.W.3d 205, 208

8

(Tex. App.—Amarillo 2009, pet. ref'd).[8] Those links include, but are not limited to: (1) the defendant's presence when a search is conducted; (2) whether the contraband is in plain view; (3) the defendant's proximity to and accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made any incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made any furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *See Triplett*, 292 S.W.3d at 208-09; *Figueroa v. State*, 250 S.W.3d 490, 500 (Tex. App.—Austin 2008, pet. ref'd) (citing *Brown v. State*, 911 S.W.2d 744, 745 (Tex. Crim. App. 1995), *cert. denied*, 555 U.S. 1185, 129 S. Ct. 1340, 173 L. Ed. 2d 609 (2009)).

These factors, however, are simply that—factors which may or may not circumstantially establish the sufficiency of evidence offered to prove the knowing "possession" of a controlled substance. *Evans*, 202 S.W.3d at 162 n.12 ("They are not a

---

[8] The Court of Criminal Appeals has recognized that the term "affirmative" adds nothing to the plain meaning of "link" and now uses only the word "link" to evaluate evidence of possession. *Evans v. State*, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006). A link is a fact or circumstance which generates a reasonable inference that the defendant knew of the contraband's existence and exercised control over it. *Lair v. State*, 265 S.W.3d 580, 600 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). The evidence demonstrating such links may be direct or circumstantial. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

litmus test."). Furthermore, there is no set formula that an appellate court can use to determine if there are sufficient links to support an inference of knowing possession of the substance in question. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). Each case must be examined according to its own facts on a case-by-case basis; *Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd), and the number of links is not as important as the combined logical force of all the evidence tending to link the accused to the contraband. *Evans,* 202 S.W.3d at 162, 166.

ANALYSIS

Here, Appellant asserts the State failed to offer any evidence of a link between the methamphetamine hidden in the compartment and himself. To the contrary, the State offered substantial circumstantial evidence that Appellant possessed the methamphetamine found in the hidden compartment. That is, Appellant was the sole operator of the vehicle during the period of surveillance; when the vehicle was stopped, it was in his possession and was returning from a suspicious trip to Houston; the drug dog alerted to the odor of a controlled substance coming from inside the vehicle; the hidden compartment was beneath the console between the driver and passenger seats and was easily accessible by Appellant; although the compartment was easily accessed, one had to know how to raise the console and pull the console back; there was a screw missing that allowed access; there was evidence that the console had been disturbed in such a manner multiple times; and Appellant was very nervous while his passenger appeared calm. Thus, the State established at least six factors indicating Appellant was

10

linked to the controlled substance hidden in the compartment—(1), (3), (9), (11), (12), and (14). *See Evans*, 202 S.W.3d at 162 n.12; *Triplett*, 292 S.W.3d at 208.

Appellant's theory at trial was that the methamphetamine belonged to his passenger. However, the State's evidence belies this assertion. As between Appellant and the passenger, Appellant had possession and control of the vehicle during the days leading up to and prior to the traffic stop; the hidden compartment was in his vehicle; the console of the vehicle had been altered to create a concealed compartment; and the concealed compartment had been used multiple times. Moreover, while Appellant appeared very nervous throughout his interaction with the deputies, his passenger was calm, took a seat by the roadside, and drew patterns for tattoos throughout the incident. Based on the overall evidence presented, we find sufficient links exist between Appellant and the methamphetamine found at the time of his apprehension and determine the evidence is sufficient to support a conviction for possession of that controlled substance. Issue one is overruled.

ISSUES TWO THROUGH SEVEN—DETENTION

In issues two through seven, Appellant contends that his detention violated his rights guaranteed by the United States and Texas Constitutions and article 38.23 of the Texas Code of Criminal Procedure. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2018).[9] Specifically, he asserts that he was

---

[9] Appellant does not assert that the Texas Constitution or Code of Criminal Procedure offer broader protections than the United States Constitution. Accordingly, we will analyze this appeal under the Fourth Amendment. *See Roberts v. State*, 444 S.W.3d 770, 772 n.1 (Tex. App.—Fort Worth 2014, pet. ref'd), *cert. denied*, 136 S. Ct. 119, 193 L. Ed. 2d 94 (2015). *See also Limon v. State*, 340 S.W.3d 753, 757 n.15 (Tex. Crim. App. 2011); *State v. Toone*, 872 S.W.2d 750, 751 n.4 (Tex. Crim. App. 1994 (collected cases cited therein). Consequently, we do not offer any separate analysis related to article I, section 9 of the Texas Constitution or any state statutes.

impermissibly detained for an unconstitutionally prolonged period of time to allow for the K9 unit to arrive. We disagree.

STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion; *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000), while applying a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). In reviewing the fact finder's decision, we do not engage in our own factual review; rather, the fact finder is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State,* 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the findings of the fact finder on (1) questions of historical fact, especially when based on an evaluation of credibility and demeanor and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Ford*, 158 S.W.3d at 493. Appellate courts review *de novo* "mixed questions of law and fact" that do not depend upon credibility and demeanor*. Id.*

FOURTH AMENDMENT

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "The touchstone of the Fourth Amendment is reasonableness." *State v. Villarreal*, 475 S.W.3d 784, 795 (Tex. Crim. App. 2014) (citing *Riley v. California*, 573 U.S. __, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014)). If a defendant seeks to suppress evidence based on a violation of the Fourth Amendment, the defendant bears the initial burden of overcoming a presumption of proper police

conduct. *See Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). If the defendant meets this burden by establishing that the search or seizure occurred without a warrant, as it did here, the burden shifts to the State to prove that the search or seizure was reasonable under the totality of the circumstances. *Id.* at 672-73.

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. __, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492 (2015). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* (citations omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* (holding that in determining the reasonable duration of a stop, it is appropriate to examine whether the police diligently pursued the investigation).

That being said, during a traffic stop, police may make inquiries related to public safety, including "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 1615. *See Overshown v. State*, 329 S.W.3d 201, 205-06 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (officer not prohibited from inquiring into matters unrelated to the purpose of the traffic stop so long as the stop is not unreasonably extended); *Strauss v. State*, 121 S.W.3d 486, 490-91 (Tex. App.—Amarillo 2003, pet. ref'd) (officer may ask the driver to step out of the vehicle, move from one location to another, ask whether the driver possesses any illegal contraband, and solicit his voluntary consent to search the vehicle). Moreover, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that

no individual has any right to possess does not violate the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 410, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005).

If during a valid detention for a traffic stop, the officer develops reasonable suspicion that the detainee is engaged in criminal activity other than the traffic violation in question, prolonged or continued detention is justified. *Martinez v. State*, 500 S.W.3d 456, 468 (Tex. App.—Beaumont 2016, pet. ref'd). Reasonable suspicion to detain exists if the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that the person is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011), *cert. denied*, 565 U.S. 840, 132 S. Ct. 150, 18 L. Ed. 2d 67 (2011). This standard is an objective one that disregards the actual subjective intent of the detaining officer and looks, instead, to whether there was an objectively justifiable basis for the detention. *Id.* In making our review, we consider the totality of the circumstances when determining whether reasonable suspicion exists. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).

The reasonableness of the duration of a detention depends on whether the police diligently pursued a means of investigation that was likely to confirm or dispel any suspicions quickly, during which time it was necessary to detain the defendant. *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985); *Love v. State*, 252 S.W.3d 684, 687 (Tex. App.—Texarkana 2008, pet. ref'd). Furthermore, an officer making a traffic stop is not required to investigate the situation in any particular order; *Lerma v. State,* 2018 Tex. Crim. App. LEXIS 48, at *19 (Tex. Crim. App. Jan. 14, 2018); *Kothe*, 152 S.W.3d 54, 65 (Tex. Crim. App. 2004), and "[t]here is no *per se* rule

14

that an officer must immediately conduct a computer check on the driver's information before questioning the occupants of the vehicle." *Lerma*, 2018 Tex. Crim. App. LEXIS 48 at *10.

In determining the reasonableness of the duration of the detention, trial and appellate courts may also consider the legitimate law enforcement purposes served by any delay in the officer's investigation. *Love*, 252 S.W.3d at 687. Fourth Amendment reasonableness requires a balance between serving the interest of the public as weighed against the individual's right to be free from arbitrary detentions and intrusions. *Id.* (citing *Kothe*, 152 S.W.3d at 63). Although the length of a detention may render a traffic stop unreasonable, "there is not an absolute and unbending time line which prescribes when this has become unreasonable." *Id.* Instead, "common sense and ordinary human experience must govern over rigid criteria*." Id.* (citing *Sharpe*, 470 U.S. at 685).

Additionally, conduct that may be innocent when viewed in isolation may give rise to reasonable suspicion when viewed in the light of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). While nervousness alone is not sufficient to establish reasonable suspicion for an investigative detention; *St. George*, 237 S.W.3d at 726, it can be relevant when considered in combination with other factors. *Neal v. State*, 256 S.W.3d 264, 281-82 (Tex. Crim. App. 2008).

ANALYSIS

Before and during the traffic stop, Task Force detectives and Deputy Burleson developed information that led the deputy to develop a reasonable suspicion that justified Appellant's detention until an open-air search of his vehicle could be conducted by the

K9 unit. *Derichsweiler*, 348 S.W.3d at 914 (the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists). These facts include the following: (1) Appellant was under surveillance by the Jefferson County Narcotics Task Force as part of an ongoing investigation; (2) a warrant had been issued authorizing the placement of a GPS tracking device on Appellant's vehicle; (3) Appellant was the sole operator of that vehicle; (4) after leaving Jefferson County, Appellant had made a suspicious trip to Houston; (5) Appellant was returning to Jefferson County on back roads rather than taking a direct route on I-10; (6) Appellant gave conflicting information about his relationship with his mother; (7) Appellant did not know the name of his passenger when asked; (8) Appellant was very nervous during his encounter with the deputies; (9) Appellant and his passenger gave conflicting information regarding where they were coming from and the purpose of their travels; (10) while Appellant's passenger was calm, Appellant was "real fidgety"; and (11) Appellant's vehicle had recently been stopped and searched by the Beaumont Police Department. Based on this information, we find that Deputy Burleson developed specific, articulable facts during the traffic stop that when combined with rational inferences from those facts, would lead him to reasonably conclude that Appellant was, had been, or soon would be engaged in criminal activity.

After his suspicions had been aroused and after he had been denied permission to conduct a search of Appellant's vehicle, Deputy Burleson did not delay but, rather, immediately called the dispatcher to bring a K9 unit to the traffic stop to conduct a search of the exterior of Appellant's vehicle for the presence of the odor of contraband. The nearest K9 unit located in Beaumont was unavailable and the K9 unit for the sheriff's

office in Jefferson County was called. When Lieutenant Viator received the call at approximately 11:35 p.m., he was asleep and at a location nearly thirty minutes from the traffic stop. Nevertheless, he got up, dressed, loaded up his dog, and arrived at the traffic stop at 12:11 a.m., approximately thirty-six minutes from the time he received the call from dispatch. Considering the circumstances, the time frame suggests that the time between the determination that a further investigation by the use of a drug dog and its actual deployment was not only done in a reasonable time frame, it was completed expeditiously in order to confirm or dispel Deputy Burleson's suspicions. *See Martinez,* 500 S.W.3d at 469-70. *See also Strauss*, 121 S.W.3d at 492 (collected cases cited therein). Appellant's issues two through seven are overruled.

ISSUES EIGHT AND NINE—JURY INSTRUCTIONS

By issue eight, Appellant asserts the trial court erred by including an instruction on the law of the parties in the jury's charge, and by issue nine, Appellant contends the trial court erred by denying his request for a jury instruction pursuant to article 38.23(a) of the Texas Code of Criminal Procedure because he was illegally detained. See TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2018). We disagree.

The first step in analyzing a claim of jury charge error is to determine whether the submitted charge was erroneous. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017) (citing *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009)). If it was, then we must determine whether the defendant was harmed by the error. *Id.*

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally

17

responsible, or by both.  *See* TEX. PENAL CODE ANN. § 7.01(a) (West 2011).  More specifically, a person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  *See id.* at § 7.02(a)(2).  In sum, the State's evidence must show that, at the time of the offense, the parties were acting together, each performing some role in the execution of the common purpose.  *Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986), *cert. denied*, 480 U.S. 940, 107 S. Ct. 1590, 94 L. Ed. 2d 779 (1987), *superseded by rule on other grounds, Barnes v. State*, 876 S.W.2d 316, 325 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 861, 115 S. Ct. 174, 139 L. Ed. 2d 110 (1994).

In determining whether a defendant participated as a party, a reviewing court may look to events occurring before, during, and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.  *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 476 U.S. 1101, 106 S. Ct. 1942, 90 L. Ed. 2d 352 (1986).  Moreover, "it is well-settled that the law of the parties need not be pled in the indictment"; *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002), and may be included in the jury instructions if the evidence supports the submission of the instruction as a possible means by which the crime was committed.  *Ward v. State,* No. 14-15-00473-CR, 2016 Tex. App. LEXIS 11507, at *9-10 (Tex. App.—Houston Oct. 25, 2016, no pet.) (mem. op., not designated for publication).

A defensive theory asserted at trial was that the methamphetamine did not belong to Appellant but to his passenger.  The evidence indicated that the hidden compartment

18

containing the methamphetamine was between Appellant and his passenger and that neither party had actual physical possession of the contraband. The video of the search shows that when the drugs were discovered, Appellant denied that the drugs belonged to him. The evidence also showed that the passenger had a prior conviction for possession of a controlled substance, and during cross-examination, Appellant's counsel established the passenger had outstanding warrants and a history with methamphetamine and emphasized that the bag containing the drugs was not fingerprinted. Under these circumstances, we cannot say that the trial court erred by denying Appellant's request to strike that portion of the jury charge instructing on the law of the parties. Accordingly, Appellant's eighth issue is overruled.

By his ninth issue, Appellant contends that the trial court erred by denying him a jury instruction under article 38.23(a) of the Texas Code of Criminal Procedure which states that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or law of the State of Texas, or of the Constitution and laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2018). "In any case where the legal evidence raises an issue . . . the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of [article 38.23(a)], then and in such event, the jury shall disregard any such evidence so obtained." *Id.* Appellant contends that he was entitled to such an instruction because the facts surrounding the actions of the law enforcement officers raised an issue of whether the contraband seized was the result of an unlawful search.

An accused's right to the submission of an article 38.23(a) instruction is limited to disputed issues of fact that are material to a claim of a constitutional or statutory violation that would render the evidence seized inadmissible. To be entitled to such an instruction, three requirements must be met:

(1) the evidence presented to the jury must raise an issue of fact;

(2) the evidence on that fact must be affirmatively contested; and

(3) the contested factual issue must be material to the lawfulness of the challenged conduct used to obtain the evidence.

*See Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). Where there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. *Id.* Furthermore, if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id.* In other words, the disputed fact must be essential in determining the lawfulness of the challenged conduct. *Id.* at 511.

At trial, Appellant argued that he was entitled to an instruction based on the lawfulness of the traffic stop itself; whereas, now he contends the officers unlawfully prolonged his detention. Therefore, to the extent that his argument goes to the length of the detention and scope of the search, his argument does not comport with his complaint at trial, and it was, therefore, not preserved for purposes of this appeal. *See Wilson v. State,* 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Furthermore, the scope and legality of the detention was a legal issue which we have already determined against Appellant in our discussion of issues two through seven. As such, even if Appellant had adequately

preserved error, he did not satisfy the three requirements necessary to warrant the submission of an article 38.23(a) instruction to the jury. Accordingly, issue nine is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle

Do not publish.