**Affirmed; Opinion Filed July 27, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00458-CR

**KEVIN DALE EMEORY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 16-10310-86-F**

# MEMORANDUM OPINION

Before Justices Lang, Myers, and Stoddart
Opinion by Justice Myers

Kevin Dale Emeory appeals the trial court's judgment convicting him of possession with intent to deliver four grams or more but less than two hundred grams of cocaine. After the jury found appellant guilty, appellant pleaded true to allegations that he had two prior felony convictions. The trial court sentenced appellant to forty years' imprisonment. Appellant brings two issues on appeal contending (1) he was denied his constitutional right to present a complete defense; and (2) the trial court erred by submitting the law of parties to the jury. We affirm the trial court's judgment.

## BACKGROUND

On May 15, 2016, at 2:20 a.m., Kaufman County sheriff's deputy William Spoon saw a car drive through a stop sign near hotels that were commonly used for drug dealing. DeShaun Barnes was driving the car that went through the stop sign, and appellant was in the front passenger

seat. Barnes's sister owned the car. Spoon stopped the car, checked Barnes's and appellant's identification, and learned that both appellant and Barnes had outstanding arrest warrants. Spoon arrested appellant and Barnes and searched the car. Spoon found a Crown Royal bag below the seat where appellant was sitting. The bag was by the handle located on the front of the seat used to move the seat forward and was near where appellant's feet would have been in the car. Inside the bag was more than 26 grams of crack cocaine including a "cookie" of cocaine weighing over twenty grams. A pill bottle was also in the bag containing several pieces of crack cocaine, which Spoon testified had been cut up into rocks for individual sale. Spoon also testified the Crown Royal bag contained "a razor blade, which is used to cut the crack cookie into rocks for individual sales and 77 unused, unopened one-gram baggies, which is [sic] also used for the sale of illegal narcotics." Appellant had $1,040 in cash on his person. Appellant told Spoon the drugs were not his.

## DENIAL OF RIGHT TO PRESENT A COMPLETE DEFENSE

In his first issue, appellant contends he was deprived of the right to present a complete defense because he "was denied the opportunity to present a redacted copy of the traffic stop video." Appellant also asserts he "was denied an opportunity to present" testimony from Barnes when Barnes refused to testify after the prosecutor told him his testimony might make him subject to federal prosecution.

### Traffic Stop Video

Concerning the first argument, that appellant "was denied the opportunity to present a redacted copy of the traffic stop video," the record does not support appellant's assertion.

Before jury selection, the trial court determined that the offenses for which appellant and Barnes had outstanding warrants, which were the reason for their arrests leading to the search of the car, were inadmissible extraneous offenses. The trial court told the parties that Spoon could

–2–

testify he had a legal right to search the car and not mention the outstanding warrants. There was a video recording of the stop and arrest starting from the time Spoon turned on the overhead lights on his squad car and lasting through the search. The State did not offer the video into evidence.

During appellant's attorney's cross-examination of Spoon, he testified he conducted the search "minutes later after I had a legal reason to detain [appellant]." He later agreed with appellant's attorney "that it was minutes from when you pulled them over to when you searched the car incident to arrest." He then estimated it was eight to ten minutes between pulling them over and obtaining the legal right to detain them. Appellant's attorney stated she wanted to introduce a redacted copy of the video to impeach Spoon because the video would show the search was at least twenty minutes after the stop. She also stated the video would show Spoon searched the car before he arrested Barnes and appellant. The prosecutor said that if the video were admitted to show the delay between the stop and the search, then that would open the door to him presenting evidence of the reason for the delay, which was Spoon's awaiting confirmation of the arrest warrants. The trial court agreed with the prosecutor that a redacted video of the stop and search might open the door to the admission of evidence of the outstanding warrants. The trial court told appellant's attorney:

> Well, let me just forewarn you so that we're all clear, so that when this does happen, there's not any undue surprise. I will allow you, obviously, if—you still have to lay the predicate and everything. If it is admitted and you do offer it, I will allow you to go through that as you feel subject to my prior rulings regarding that opinion.
>
> . . . .
>
> However, State then can, obviously, under the rule of optional completeness, play whatever other portions they want to if there is any type of mischaracterization or false impression in the jury's mind as to that time frame still subject to my prior rulings.
>
> But if we go over that line to where we put a false impression in the jury's mind as to the length of time or why he was—or unreasonably detained for a certain amount of time, then that opens—that could open the door, just so we're clear, as to why it was taking that long. He was—he was, I'm assuming, running the warrant, finding

–3–

out what was—what the—confirming the warrants before he did so. So I'm assuming that kind of—so just let me caution you before you go down that line, that if that does—that could open the door for us to say why it is they were doing so. So I just want that to be clear beforehand, but obviously I will allow you to admit the—

Appellant's attorney did not offer the video into evidence. The trial court did not exclude the video recording; the court only warned appellant's attorney of the possible consequences of admitting the recording.

On appeal, appellant argues he "was denied the opportunity to present a redacted copy of the traffic stop video which would have properly excluded evidence of otherwise inadmissible extraneous offense evidence during the guilt innocence of phase of Appellant's trial." We disagree. Appellant never offered the recording into evidence, and the trial court did not exclude it. To the extent appellant asserts the trial court erred by excluding the recording, the record does not support this assertion because the court repeatedly stated it would admit the recording if appellant offered it. To the extent appellant asserts the trial court erred by stating that the State would be allowed to present evidence about the warrants under the rule of optional completeness if the recording "put a false impression in the jury's mind," appellant presents no argument explaining why the trial court's statement was incorrect. We conclude the record concerning the video recording does not show appellant was deprived of the opportunity to present a defense.

**Barnes's Testimony**

Appellant also argues he "was denied an opportunity to present seemingly relevant testimony from the co-defendant and driver of the vehicle Appellant was a passenger in when stopped, arrested, and charged with this first degree" offense.

Before appellant's trial began, Barnes pleaded guilty, his adjudication was deferred, and he was placed on community supervision for four years. During appellant's trial, appellant called Barnes as a witness. In the judge's chambers, Barnes met with his counsel, who advised him, if

he testified, not to admit to anything that might subject him to additional charges. Barnes stated he understood his rights. In open court, but outside the presence of the jury, the prosecutor told Barnes that although he had pleaded guilty to the drug charges in state court, he might still face federal charges for the offense.

> [Prosecutor]: Now, I just want to make sure you understand that if you testify to even this case, anything about this case, they can file on you federally for this case if you even open your mouth about it. Did they tell you that? Did your attorney explain—not other cases, not some conspiracy thing over there, but this case—if you say you were in the car you knew about the drugs, they can file on you federally. Did they say that?
>
> Mr. Barnes: Yes, sir.
>
> [Prosecutor]: You don't mind testifying to that?
>
> Mr. Barnes: Yes, sir.
>
> [Prosecutor]: You do or you don't?
>
> Mr. Barnes: I don't.
>
> [Prosecutor]: You don't want to testify?
>
> Mr. Barnes: I don't want to testify.
>
> [Prosecutor]: Did they explain it that way or did they say, well, you can testify to what you did in the plea? Because that's not right. If you testify what's in the plea, that could indict you federally. Do you understand that?
>
> Mr. Barnes: Yes, sir.
>
> [Prosecutor]: And your wish is you don't want to proceed. You don't want to testify?
>
> Mr. Barnes: No.

Appellant's attorney asserted that Barnes had already pleaded guilty and therefore had "waived his right to self-incrimination. I have a right to ask him questions about what happened during this offense." Appellant's attorney asked Barnes if he would invoke his Fifth Amendment right not to testify:

[Appellant's Attorney]: And then it's my understanding—it's everybody's understanding that if we called you to the stand, you would not answer any questions.

Mr. Barnes: No, ma'am.

[Appellant's Attorney]: And you would invoke your right to—your Fifth Amendment right?

Mr. Barnes: Yes, ma'am.

[Appellant's Attorney]: And that's all you would do?

Mr. Barnes: Yes, ma'am.

Appellant's attorney then stated she would not call Barnes to testify.

Appellant did not assert in the trial court that the prosecutor's admonishments to Barnes were incorrect, nor did appellant argue that Barnes's assertion of his Fifth Amendment right not to be a witness against himself deprived appellant of a defense.

On appeal, appellant argues that a prosecutor's threats or intimidation that dissuade a witness from testifying may infringe a defendant's due process rights. Appellant cites *Webb v. Texas*, 409 U.S. 93 (1972) (per curiam), in support of this argument. In that case, the defendant called a witness to testify who had a criminal record and was serving a prison sentence. *Id.* at 95. The trial court admonished the witness that he did not have to testify, but that if he did testify and lied, then he would be prosecuted for perjury, would have several years more stacked onto his current sentence, and the perjury conviction would be held against him at parole hearings. *Id.* at 95–96. The witness then refused to testify. The defendant's counsel "objected to these comments, on the ground that the judge was exerting on the mind of the witness such duress that the witness could not freely decide whether or not to testify in the [defendant's] behalf, and was thereby depriving the [defendant] of his defense by coercing the only defense witness into refusing to testify." *Id.* at 96. In this case, appellant did not object to the prosecutor's admonishments on the ground that the admonishments interfered with Barnes's decision whether to testify. Therefore, in

this case, unlike in *Webb*, any error from the prosecutor's admonishments was not preserved for appellate review. *See* TEX. R. APP. P. 33.1(a).

Appellant also cites *Davis v. State*, 831 S.W.2d 426 (Tex. App.—Austin 1992, pet. ref'd). In that case, a witness testified contrary to some of the State's witnesses. *Id.* at 435. The district attorney then called the witness to his office and threatened her with a grand-jury indictment if her original testimony was found to be false. *Id.* at 436. The district attorney told the witness he had already put one person in jail for lying on the witness stand the previous year. *Id.* The next day, the witness changed her testimony. The defendant objected to prosecutorial misconduct from the district attorney threatening the witness and moved for a mistrial. *Id.* The trial court denied the motion for mistrial. *Id.* at 437. The court of appeals determined the district attorney's conduct was improper and concluded the trial court erred by denying the motion for mistrial. Like *Webb*, the defendant in *Davis* preserved error by objecting. In this case, however, appellant did not object. And even if the attorney's statements that Barnes "waived his right to self-incrimination" and "I have a right to ask him questions about what happened during this offense" are considered objections, she did not obtain a ruling denying these objections. Instead, she stated she would not call Barnes to testify. No error was preserved for appellate review. *See* TEX. R. APP. P. 33.1(a)(1), (2).

Appellant also cites *Kelly v. State*, 321 S.W.3d 583 (Tex. App.—Houston [14th Dist.] 2010, no pet.), in support of his argument. In that case, the defendant was charged with engaging in organized criminal activity, specifically, sexually assaulting children. *Id.* at 587. As part of his defense, the defendant wanted to call a former foster parent of the children who had been charged in California with sexually assaulting other children. *Id.* at 592. However, "[t]he trial court repeatedly instructed appellant that he would not be permitted to introduce any evidence regarding the charges against [the former foster parent] in California. . . . [T]he trial court granted the State's

–7–

oral motion in limine preventing appellant's counsel from mentioning to the jury that [the former foster parent] had been investigated or arrested on sexual assault charges . . . ." *Id.* at 592. The court of appeals stated, "by refusing to permit appellant to present this evidence to the jury, appellant was effectively denied the opportunity to present his defense." *Id.* at 594. In this case, appellant has not shown the trial court refused to permit him to present any evidence. Instead, appellant's attorney did not call Barnes to testify. *Kelly* is not applicable to this case.

We conclude appellant has not shown he was deprived of the opportunity to present a defense. We overrule appellant's first issue.

## CHARGE ERROR

In his second issue, appellant contends the trial court erred by overruling appellant's objection to charging the jury on the law of parties. The jury charge instructed the jurors that they could find appellant guilty from him "acting alone or as a party." The charge's definition of criminal responsibility of a party generally tracked the statutory language in section 7.01(a) and 7.02(a)(2) and (b) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. §§ 7.01(a); 7.02(a)(2), (b) (West 2011).

We review claims of jury-charge error in a two-step process. First, we determine whether the charge is erroneous. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). If we find error in the charge, we consider whether an objection to the charge was made and analyze the error for harm. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). Where, as in this case, error was properly preserved by a timely objection to the charge, reversal is required only if the error was calculated to injure the rights of the defendant, which has been defined to mean there is "some harm" caused to the defendant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *see also Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. *See* PENAL § 7.01(a). In this case, the trial court charged the jury, "A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he encourages, directs, aids, or attempts to aid the other person to commit the offense." *See id.* § 7.02(a)(2). In determining whether a defendant participated as a party, a reviewing court may look to events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to do the prohibited act. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985).

In this case, appellant argues no evidence shows he was liable as a party to the offense by encouraging, directing, aiding, or attempting to aid another person to commit possession of cocaine with intent to deliver. However, even if appellant is correct and the trial court erred by charging the jury on the law of parties, we cannot reverse appellant's conviction unless the improper charge caused appellant some harm. Where "the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless." *Ladd v. State*, 3 S.W.3d 547, 564–65 (Tex. Crim. App. 1999) (internal quotation omitted); *see also Washington v. State*, 417 S.W.3d 713, 723 n.7 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("Because there is sufficient evidence of guilt as a principal, we need not address guilt as a party."). As the court of criminal appeals explained, because there is no evidence tending to show appellant's guilt as a party, it is almost certain a jury would not rely upon the parties instruction in arriving at its verdict but would base the verdict on the evidence tending to show appellant's guilt as a principal actor. *See Ladd*, 3 S.W.3d at 565.

To convict appellant of possession of cocaine with intent to deliver, the State had to prove beyond a reasonable doubt that appellant (1) exercised "actual care, custody, control, or

–9–

management" of the substance and (2) knew the matter possessed was contraband. *See* PENAL § 1.07(39) (West Supp. 2017); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). When a defendant does not have exclusive possession of the controlled substance or of the locale where the controlled substance was found, it cannot be concluded or presumed that the defendant had possession over the contraband unless there are additional independent facts or circumstances that tend to connect or link the accused to the knowing possession of the contraband. *See Triplett v. State*, 292 S.W.3d 205, 208 (Tex. App.—Amarillo 2009, pet. ref'd). There are numerous nonexclusive factors that, under the unique circumstances of each case, have been recognized as contributing to an evaluation of whether the defendant in that situation possesses or is linked to the contraband. *See id.* Those links include, but are not limited to: (1) the defendant's presence when a search is conducted; (2) whether the contraband is in plain view; (3) the defendant's proximity to and accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made any incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made any furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). The "links rule" is designed to protect the innocent bystander—a relative, friend, spouse, roommate, or even stranger to the actual possessor—from conviction based solely upon his fortuitous proximity to someone else's illegal activities. *Id.* at 161–62. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or

control of those drugs. *Id.* at 162. However, presence or proximity, when combined with other evidence, either direct or circumstantial (such as the "affirmative links"), may be sufficient to establish possession beyond a reasonable doubt. *Id.* It is the logical force of all the evidence, both direct and circumstantial, that is dispositive, not the number of affirmative links. *Id.*

In this case, appellant was present when the search was conducted. Although the drugs were not in plain view and were concealed in a Crown Royal bag, they were within appellant's easy reach, just behind where his feet would have been in the car and next to the handle for adjusting the seat. Besides the drugs, there was also drug paraphernalia, including a razor blade for chipping off pieces of cocaine and small bags for packaging the pieces of cocaine for resale. Appellant also had a substantial amount of cash on his person, $1,040. The State also presented the evidence of Ty Burns, a narcotics investigator for the City of Terrell Police Department. Burns testified that Crown Royal bags are "a lot of times" used for concealing illegal narcotics. He also testified that a drug dealer would keep the money close to him. Spoon testified that the driver of the car could have locked the drugs in the glove compartment or the trunk or other places, but for a person in the passenger seat, the place where the drugs were found was "a good relation [sic] of somebody reaching down like that and putting it right there." Burns testified, without objection, that appellant was "selling dope. . . . And not only is he selling it—like I said—not only is he possessing it, he's delivering it." During jury argument, the State mentioned party liability, but the State mostly relied on appellant's guilt as the primary actor. *See Teague v. State*, 864 S.W.2d 505, 517–18 (Tex. Crim. App. 1993) ("[A]ppellant's guilt as the primary actor was the theory best supported by the overwhelming evidence and most fervently advanced by the State in closing arguments. Under these circumstances, any error . . . in failing properly to apply the law of parties was harmless." (Footnotes omitted.)).

–11–

We conclude the evidence was clearly sufficient to convict appellant as the primary actor. Therefore, any error from the submission of the parties charge did not cause appellant any harm. We overrule appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.1
170458F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KEVIN DALE EMEORY, Appellant

No. 05-17-00458-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 16-10310-86-F.
Opinion delivered by Justice Myers.
Justices Lang and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of July, 2018.